No. 14768

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

CARMINE CUTONE,

Plaintiff and Appellant,

vs.

ANACONDA DEER LODGE, Successor to
City of Anaconda, Montana et al.,

Defendant and Respondent.

_____

Appeal from:  District Court of the Third Judicial District,
              Honorable Robert Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Leonard J. Haxby argued, Butte, Montana

    For Respondent:

        John Radonich, County Attorney, Anaconda, Montana
        Kevin Campana argued, Deputy County Attorney, Anaconda,
        Montana

_____

                        Submitted: January 18, 1980

                        Decided:     APR 9 - 1980

Filed: APR 9 - 1980

_____
                          Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff and appellant Carmine Cutone appeals from an order of the Deer Lodge County District Court affirming the Anaconda-Deer Lodge County Board of Adjustment's denial of Cutone's request for a zoning variance.

In July, 1973, the City of Anaconda adopted a zoning ordinance based upon land use designations in its comprehensive plan. The governments for the City of Anaconda and The County of Deer Lodge were merged into a new governmental unit, Anaconda-Deer Lodge County, in May 1977. Anaconda-Deer Lodge County, the respondent, is the successor to all legislation of the City of Anaconda, including the zoning ordinance.

Cutone owned the Ace Bar, 320 East Park Street, Anaconda, until December, 1977, when he sold the building to the Anaconda Urban Renewal Agency. In February, 1978, Cutone purchased two buildings at 803-805 East Park Street intending to relocate his bar. The block was and is within a district zoned "RM", which stands for "Multiple-Family Residential", even though there are several commercial establishments in the immediate area. Prior to Cutone's purchase the premises had been used partially for storage and partially as a taxidermy shop.

Following the purchase of the property Cutone applied to the Board of Adjustment for a variance to allow him to open a bar and restaurant. The Board of Adjustment denied the request for a variance after holding a public hearing.

Cutone filed a complaint in District Court seeking to overturn the Board of Adjustment's decision, or in the alternative, to have the zoning ordinance declared unconstitutional. The District Court directed the Board to review its denial and to return its findings to the court. The Board of Adjustment found that granting a variance would not be in the best interests of

the community as a whole and that the proposed use would not be in harmony with the general purpose and intent of the zoning ordinance. The Board based its decision upon findings that the premises was unsuitable for the proposed use, that it would constitute a fire hazard, and that the off-street parking requirements of the zoning ordinance would not be met. The Board of Adjustment had received a petition and oral testimony from 28 area residents who were opposed to the granting of a variance.

After the Board of Adjustment reviewed its denial of the variance request, the District Court allowed the appellant a full hearing and testimony was introduced by both parties. The court made the following findings and conclusions: (1) that Cutone, at the time of purchase, either had knowledge of the zoning designation or had the means of acquiring the knowledge and either made no inquiry or assumed that a variance would be granted; (2) that the Board of Adjustment has consistently refused to grant variances for commercial use in an area zoned "RM"; (3) that the original adoption of the zoning ordinance was proper, since there was no compelling evidence to show a failure to reasonably consider the character of the district and its peculiar suitability for particular uses; and (4) that the ordinance was constitutional.

The following issues have been considered on appeal:

1. Whether the zoning board failed to comply with state law in adopting the zoning ordinance;

2. Whether the Anaconda-Deer Lodge County Board of Adjustment and the District Court abused their discretion in denying the requested variance;

3. Whether the ordinance results in a taking of Cutone's property for public use without due process of law;

4. Whether the zoning ordinance is an unconstitutional denial of equal protection on its face;

5. Whether the ordinance as applied to Cutone violates

- 3 -

the Fourteenth Amendment guarantee of equal protection of the law.

First, appellant contends that the zoning commission failed to follow Montana statutory law when enacting the zoning ordinance in question. The thrust of this contention is that the best and most appropriate use of the property within the district was not considered.

In looking to the statutory framework to be followed by the local government, section 76-2-301, MCA, in pertinent part, provides that " . . . [f]or the purpose of promoting health, safety, morals, or the general welfare of the community [the local governmental unit] . . . is hereby empowered to regulate and restrict . . . the location and use of buildings, structures, and land for trade, industry, residence, or other purpose."

Section 76-2-304, MCA, as set out below, establishes criteria to be considered by the local government in adopting a zoning ordinance.

> "Purposes of zoning. (1) Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements.
>
> "(2) Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." (Emphasis added.)

Gene Marcille, a past-president of the City of Anaconda planning board and former planning director for Deer Lodge County, testified at trial concerning the considerations and procedures used by the planning board in adopting zoning ordinances for the

- 4 -

City of Anaconda.  The planning board, in general and in zoning Park Street, reviewed zoning recommendations proposed by a consulting firm to determine whether the zones were properly proposed. Public hearings and meetings were also held.  According to Mr. Marcille's testimony, the board considered the following factors in adopting the proposed zoning ordinances:  (1) The density of housing; (2) the density of population; (3) fire protection problems including access for buildings, traffic patterns and traffic density; (4) the overall safety of the public looking again to traffic patterns, traffic density and off-street parking; and (5) of primary importance, the highest and best use within the various portions of the community.  Based on this testimony the record contains substantial credible evidence that the Montana statutory framework for adopting zoning ordinances was properly followed.

In essence, the appellant is actually contending that there was a violation because he is not being allowed to use his property for its highest and best use.  However, the statute does not require that the zoning ordinances take into account the highest and best use of each parcel of real estate within the zones or community.  In fact, section 76-2-304, MCA, requires that the peculiar suitabilities and most appropriate use of the land throughout the municipality be considered.  Based upon the record, we find substantial evidence that Anaconda-Deer Lodge County has acted within the authority delegated to it by the legislature.

Were we to hold that a zoning ordinance must ensure each property owner the highest and best use of his property, an intolerable burden would be placed on local governments, and the entire purpose of local planning legislation would be defeated.

Next, section 76-2-323, MCA, must be considered in addressing appellant's challenge to the Board of Adjustment's denial of the variance request.  The statute provides, in pertinent part:

- 5 -

"Powers of board of adjustment. (1) The Board of adjustment shall have the following powers:

" . . .

"(c) to authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done . . ."

Montana case law clearly establishes that the following conditions must be present before the granting of a variance is proper: (1) The variance must not be contrary to the public interest; (2) a literal enforcement of the zoning ordinance must result in unnecessary hardship owing to conditions unique to the property; and (3) the spirit of the ordinance must be observed and substantial justice done. Lambros v. Missoula (1969), 153 Mont. 20, 452 P.2d 398; Rygg v. Kalispell Board of Adjustment (1976), 169 Mont. 93, 544 P.2d 1228. These cases both state that the scope of review is to be limited to the determination of whether competent and substantial evidence exists to support the finding and whether the court or Board of Adjustment has clearly abused its discretion.

Testimony at trial reveals that the two buildings, owned by the appellant and located at 803-805 East Park Street, are built within inches of the neighboring buildings, which creates a fire hazard. This hazard would be even greater if the buildings were converted into a tavern. In addition, expert testimony reveals that a tavern generates an average increased volume of traffic from both patrons and business service personnel. This increase in traffic would create parking problems as well as emergency vehicle access difficulties. In this instance the hazard is even more acute than it would be in other portions of the city, since Park Street is one of Anaconda's two major fire lanes.

- 6 -

This evidence supports the District Court's finding that the granting of the variance in this case would be contrary to the public interest and the spirit of the ordinance. The spirit of the ordinance is obviously to limit commercial growth in this area in the interest of public safety and well being.

The denial of a variance also does not result in an unnecessary hardship to the appellant. The property purchased, a 140' x 75' lot with two buildings on it, was purchased for $15,000. The buildings would require extensive remodelling to convert them into a tavern and to bring them up to building code specifications, and a part of a building would have to be destroyed in order to create a minimal number of off-street parking spaces. Also, the appellant owns eight houses in Anaconda, has owned and operated the Ace Bar, and has leased and operated the 919 Bar. These facts point to the conclusion that Mr. Cutone should have had sufficient real estate knowledge to determine how the land was zoned prior to the purchase.

With regard to appellant's contention that he has been deprived of property without due process of law, it is apparent that he does not state a claim on which relief can be granted. The ordinance was passed in 1973 and appellant did not purchase the property until 1978. Thus, any diminution in value occasioned by the ordinance occurred prior to his ownership.

Appellant next contends that the zoning ordinance is an unconstitutional denial of equal protection on its face. However, it is well established that such an ordinance is a valid exercise of police power and will be upheld if any reasonable basis exists for the classification within the ordinance.

The ordinance being attacked in this appeal contains 46 enumerated qualifying uses within the zone, many of which pertain strictly to residential occupation. It appears that appellant's challenge focuses primarily upon the following permitted uses,

- 7 -

nonresidential in character:  a retail apothecary shop selling only medical related supplies and located within a clinic or hospital, clinics, colleges, hotels not catering to transient guests, fraternal lodges, coliseums, stadiums, gymnasiums, churches, and mortuaries.  It is appellant's contention that no reasonable basis exists for allowing the above uses and not allowing non-conforming commercial uses such as restaurants or taverns.

This Court, in Freeman v. Board of Adjustment (1934), 97 Mont. 342, 34 P.2d 534, addressed the constitutionality of zoning ordinances under both the due process clause and the equal protection clause.  In dicta, the Court stated that the trend of decisions is to support the validity of the ordinances and the statutes authorizing them, and that "the weight of judicial opinion so clearly preponderates in support of such provisions that we may well take the principle as established."  The basis for the finding of constitutionality is that such ordinances "constitute a valid exercise of the police power; that is to say, they have a substantial bearing upon the public health, safety, morals and general welfare of a community."  97 Mont. at 352, 34 P.2d at 537.

Freeman v. Board of Adjustment, supra, followed the landmark United States Supreme Court case of Euclid v. Amber Realty Co. (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L Ed 303.  In addressing the constitutionality of the ordinance which restricted the plaintiff's land to residential use, the Court said:

> "The ordinance now under review, and all similar
> laws and regulations, must find their justification
> in some aspect of the police power, asserted for
> the public welfare.  The line which in this field
> separates the legitimate from the illegitimate
> assumption of power is not capable of precise
> delimitation . . . If the validity of the legis-
> lative classification for zoning purposes be <u>fairly
> debatable</u>, the legislative judgment must be allowed
> to control."  (Emphasis added.)  272 U.S. at 387-
> 388, 47 S.Ct. at 118, 71 L.Ed at 310-311.

More recently, the United States Supreme Court had occasion

to review a more restrictive ordinance. The ordinance res-
tricted land use to one-family dwellings, preventing the occu-
pation of residences by more than two unrelated individuals within
the district. The action challenging the constitutionality of
the ordinance was brought by the owner of a residence and three
of his six unrelated tenants. Justice Douglas stated that he
realized that upholding the ordinance would have an economic im-
pact on the rental values within the community. However, the
Court, in upholding the ordinance, stated:

> "We deal with the economic and social legislation
> where legislatures have historically drawn lines
> which we respect against the charge of violation
> of the Equal Protection Clause if the law be
> '"reasonable, not arbitrary"' (quoting Royster
> Guano Co. v. Virginia, 253 U.S. 412, 415) and
> bears 'a rational relationship to a [permissible]
> state objective.' Reed v. Reed, 404 U.S. 71, 76.

> "It is said, however, that if two unmarried people
> can constitute a 'family,' there is no reason why
> three or four may not. But every line drawn by a
> legislature leaves some out that might well have
> been included. That exercise of discretion, how-
> ever, is a legislative, not a judicial, function."
> Village of Belle Terre v. Boraas (1974), 416 U.S.
> 1, 8, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797.

This Court is also unwilling to sit as a super-legislature.
The City of Anaconda, pursuant to its comprehensive plan, passed
this ordinance in an attempt to reduce the average increased
volume of traffic and congestion created by commercial establish-
ments along Park Street, a major fire lane within the city. The
ordinance is "reasonable, not arbitrary," and "bears a rational
relationship to a permissible state objective," the promotion of
public safety. It is unquestioned that the local government could
have imposed greater restrictions to protect the public to a greater
extent, or placed the interest of individual property owners above
the public interest; however the line must be drawn somewhere.
The local government is in a better position to draw that line,
and we must defer to its judgment.

- 9 -

The appellant also contends that the ordinance is an unconstitutional denial of equal protection as applied. This issue is usually raised in cases in which a statute which is constitutionally valid on its face is administered in an arbitrary and discriminatory fashion. See Yick Wo v. Hopkins (1886), 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed 220. In our present appeal, the District Court found that "the Board has consistently refused to grant variances for commercial use based upon the RM designation of the area." Appellant raises no evidence attacking this finding and the record does not reveal any instances of arbitrary or discriminatory administration of the ordinance. It appears that this argument is but another means for appellant to assert that a variance should have been granted. As previously discussed Montana statutory and case law clearly delineates the instances in which a variance is to be granted.

We therefore conclude that the ordinance is constitutional as a valid exercise of police power, that it has not been applied in an arbitrary or discriminating manner, that the City of Anaconda acted within its delegated authority in enacting the ordinance by complying with statutory requirements, and that the Board of Adjustment and the District Court were fully justified in finding that the granting of the requested variance would not be in the public interest.

The judgment is affirmed.

_____
Chief Justice

We concur:

_____
_____
Justices

Mr. Justice John C. Sheehy dissenting:

The property here consists of two buildings. Since 1925 they have housed or been used as commercial establishments, except for short periods of non-use between lessees. A bar was located at 803 East Park until 1938, when its leasee built the Club Moderne. It was vacant for two years, leased as a bar premises again, closed for a couple of years and became a bar again in 1964. In 1972 it was used for storage, and in 1974 leased as a book shop, but the lessees failed to get financing.

A grocery was located at 805 East Park until 1960, then it was vacant for two years, and used as a parachute rigging shop and then as a taxidermy shop until Cutone purchased it.

The Club Moderne is right next door, at 801 East Park. Across the street is a Buick new and used car dealership. There is a gas station on the corner, apartment houses next door to that, and the JFK bar across the street from the Club Moderne. The whole area is mostly commercial, except that across the street from this property there are 3 family residences and 4 or 5 family residences on the same side of the street in the same block.

The description of the property is characteristic of that area of Anaconda.

The zoning ordinance itself recognizes the heterogeneous character of the neighborhood because of the permitted uses contained in the ordinance. In fact, the ridiculous nature of the denial of a variance in this case may be demonstrated by placing the alleged reasons for denial side by side with some of the permitted uses in the same ordinance:

REASONS FOR DENYING VARIANCE:

1. fire hazard because of nearby buildings

2. greater fire hazard risk of tavern

3. increased traffic from patrons and business visitors

4. parking problems

5. emergency vehicle access difficulties

PERMITTED USES UNDER THE ZONING ORDINANCE:

1. coliseum, stadium, gymnasium

2. churches

3. fraternal lodges

4. mortuaries

5. drug stores in clinics

6. clinics

7. hospitals

8. catering establishments

9. trade schools, business schools, dancing schools

10. convalescent and nursing homes

11. apartment hotels

12. mobile home parks

13. public and private grade and high schools

14. public and private colleges

15. taxi stands for 5 taxis

16. tourist homes

17. libraries and art galleries

The permitted uses make a laughing stock out of any effort to restrain the use of 803-805 East Park as a tavern. Any fraternal organization, national or local, could move in there and open a bar tomorrow with impunity. Application of the zoning ordinance to deny the variance does therefore result in an unconstitutional application as to Cutone. The variance is clearly within the criteria required by Wheeler v. Armstrong (1975), 166 Mont. 363, 533 P.2d 964.

Under section 76-2-304, MCA, zoning decisions shall be made with a view to conserving the value of buildings and

"encouraging the most appropriate use" (not the highest and best use) of land throughout the municipality. Here the most appropriate use of the property under the evidence, from its history and present surroundings, is commercial, not residential.

I would reverse.

_____
                    Justice

I join in the foregoing dissent.

_____
                    Justice