No. 88-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

WENDI SCHENDEL and DALE W.
SCHENDEL,

Plaintiffs and Appellants,

-vs-

BOARD OF ADJUSTMENT OF THE CITY OF
BOZEMAN, MONTANA, and CITY OF BOZEMAN,
MONTANA,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard J. Carstensen, Billings, Montana

For Respondent:

Lineberger & Harris; Peter S. Lineberger, Bozeman,
Montana

Submitted on Briefs: March 9, 1989

Decided: May 4, 1989

Filed:

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises from the July 18, 1988 decision of the District Court of the Eighteenth Judicial District, Gallatin County, Montana, and that court's September 19, 1988 order refusing to reconsider and amend its order upholding the decision of the Board of Adjustments of the City of Bozeman (Board). We affirm.

This matter appeared in the District Court on a writ of certiorari and was returned to the Board for a full hearing on December 1, 1986. The case was ultimately submitted to the District Court upon stipulated facts, exhibits and issues, and on July 18, 1988, the District Court found in favor of the Board. Upon the court's denial of appellants' request for "reconsideration" they appeal to this Court.

In 1977, appellants Wendi and Dale Schendel (Schendels) purchased 2.7 acres in an R-S zone adjacent to the City of Bozeman. Shortly after the Schendels built their home they began to collect and care for various types of waterfowl. They initially began raising only a few birds and by 1986 gradually built up the bird population to 350 or more, especially during the summer months. While acquiring more and more waterfowl the Schendels spent over $35,000 in pens, ponds and fences to accommodate and control the various birds. The Schendels testified that they have arranged the ground level basement of their house to accommodate many of the ducks and geese during the winter months.

In 1985 an unsigned complaint was received by the Board concerning the waterfowl in the Schendels' area. A hearing was held before the Board as a result of the determination and subsequent order of the Bozeman building official that

the Schendels' use of their property violated the Bozeman Municipal Zoning Code. This first hearing before the Board was held May 5, 1986. As a result of the May 5, 1986 hearing, the matter went to the District Court on a petition for writ of certiorari and was then returned to the Board for a full hearing. A transcript was taken at this second Board hearing held on December 1, 1986, which indicates a number of people appeared in support of the Schendels' continuation of their homesite operation. There were also a number of other people who appeared objecting to the noises caused by the numerous ducks and geese heard throughout the major portion of the year. Some of the neighbors testified that they were awakened and kept awake from 2:00 a.m. and 3:00 a.m., particularly in the spring and fall of the year and that they had discussed this with the Schendels. The Schendels testified at the hearing that they did not realize there was much objection to the waterfowl and the resulting noise. The Schendels further testified that some of their operations were in conjunction with the Federal and State government in raising rare waterfowl.

As noted, the Schendels originally began their operation with very few ducks and geese but, when the population increased to over several hundred, it became "ducks unlimited" and the noise, combined with the unsanitary conditions of the waterfowl made an intolerable situation for some of the neighbors.

After the Board's December 1, 1986 full hearing, it granted a variance which required the Schendels limit the number of birds on their property to only 40 resident birds, and 200 transient birds during the nesting period. The terms

3

of the variance were made effective for two years or until their property was sold, which ever first occurred.

Following the first hearing on May 5, 1986, the Schendels filed a petition for a writ of certiorari in the District Court. The petition requested relief by certiorari under Title 27, Chapter 25, MCA, and under the zoning regulation, Section 18.66.080, of the Bozeman Municipal Zoning Code which provides:

> Any person or persons . . . aggrieved by any decision of the Board of Adjustment, or any taxpayer, or any officer, department, board or bureau of the municipality, may present to the court of record a petition, duly verified, setting forth that such decision is illegal in whole or in part specifying the grounds of illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the Board.

The Schendels allege that the District Court had before it not only their request for writ of certiorari relief, but also an appeal as to whether the Board's decision was legal and that the District Court erred in deciding this case on only the first point.

The principal issue before the District Court and before this Court is whether the Board of Adjustment of the City of Bozeman acted outside its jurisdiction in granting a variance to the Schendels which imposed limits on the number of waterfowl the Schendels could raise; and whether the District Court properly approve the action of the Board.

The District Court received the writ of certiorari on stipulated facts which state as follows:

> 1. Wendi Schendel and Dale W. Schendel, plaintiffs, are the owners of

4

the following described property in Gallatin County, Montana:

> Lot 7 in Sourdough Ridge No. 2 Subdivision according to the official plat thereof, on file and of record in Book 1 of Plats, Page 30, Office of the Clerk and Recorder in such county.

2. Wendi and Dale Schendel have raised water fowl and endangered birds on those premises since 1978. These activities progressively increased on the premises until about 1986. The Schendels' property has carried, at times, as many as 350 water fowl; and the Schendels' [sic] plan to indefinitely continue to have as many as 300 water fowl on the premises during the summer months.

3. Pursuant to a notice by the defendant, Board of Adjustment of the City of Bozeman, a copy of which is attached as Exhibit "A", plaintiffs appeared before such board on December 1, 1986.

4. At the time of the hearing, the board received testimony and affidavits in support of the Schendels' water fowl production, as well as testimony and affidavits in opposition of [sic] the granting of variance to Wendi and Dale Schendel. . . .

5. At the hearing on December 1, 1986, the Board acknowledged that raising water fowl was an agricultural use as per the adopted definition listed under Section 18.04.030, accepted by the Board.

6. Following testimony in the hearing, the board made a decision allowing the Schendels a variance for the raising of water fowl on the following conditions:

5

> The water fowl population on your property will not exceed 40 permanent birds, and 200 transient birds; the variance shall be for two years, or until the property is sold, whichever is first. . .

7. Plaintiff's [sic] property is located in zone R-S-2, that zoning allows by Section 18.12.020 a permitted use by any party of their property if it is for "agricultural purposes". 18.04.030 defines agricultural use as:

> Agriculture means the tilling of soil, the raising of crops, horticulture and gardening, dairying or animal husbandry, including uses customary [sic] incidental thereto, but not including any agricultural industry or business such as fruit, plants, fur farms, animal hospitals, commercial feed lots, or similar use. . .

Section 18.12.020 also provides:

> J. The keeping of animals and fowl for family food production and the keeping of horses for private use, together with their dependant young as hereinafter set forth per two and one-half acres: one horse, or one cow, or two sheep, or two goats, or ten rabbits, or thirty-six fowl (chickens, pheasants, pigeons, etc.), or six larger fowl (ducks, geese, turkeys, etc.).

It is the Schendels' position that the Board recognized the use of their property was for agricultural purposes, yet the Board's decision illegally restricted the number of waterfowl they could keep on their property. The Schendels cite a number of out-of-state cases pertaining to

agricultural land use, but in view of the Board's findings and the fact that the District Court upheld the Board in finding the Schendels' property was being used for agricultural purposes, we hold that the Schendels' argument and case law, while creative, is not persuasive.

This Court must consider whether the District Court, on certiorari, properly considered this matter under § 76-2-327, MCA, which provides that a district court may hold a hearing, take further evidence on the matter, "reverse or affirm, wholly or partly, or may modify the decision brought up for review."

Section 76-2-304(2), MCA, sets forth the fundamental purposes of zoning:

> (2) Such [zoning] regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality.

The above quoted sections from the Bozeman Municipal Zoning Code and Montana Code Annotated are of import to this case when considering the suitability of the presence of some 300 waterfowl in a suburban neighborhood adjacent to the City of Bozeman.

There are two levels of judicial review to be considered here: a review by the District Court of the Board's decision, and a review by this Court of the District Court's decision.

As to the review by the District Court, Montana law provides the procedures for a writ of certiorari in Title 27, Chapter 25, MCA. Section 27-25-303, MCA, states:

7

> The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer.

Under these provisions, the District Court's function was to determine whether the Board's action was legal and whether the Board acted within its jurisdiction. It is in this light that the case was presented to the District Court by the parties.

Under the provisions of § 76-2-327, MCA, and Section 18.66.080, Bozeman Municipal Zoning Code, numerous cases have set forth Montana law with respect to the full standard of review by a district court. See, Lambros v. Board of Adjustment of City of Missoula (1969), 153 Mont. 20, 452 P.2d 398, where this Court held that upon review of the district court's decision on a variance question before a board of adjustment, the only question for this Court was whether an abuse of discretion was committed by the district court. See also, Whistler v. Burlington Northern (Mont. 1987), 741 P.2d 422, 44 St.Rep. 1415.

This Court has established the principle that an abuse of discretion must be shown before the district court may set aside a board's decision. See, e.g., Wheeler v. Armstrong (1975), 166 Mont. 363, 533 P.2d 964; Rygg v. Kalispell Board of Adjustment (1976), 169 Mont. 93, 544 P.2d 1228; and Cutone v. Anaconda-Deer Lodge (1980), 187 Mont. 515, 610 P.2d 691.

The Schendels have asked this Court to hold that the Board abused its discretion in issuing the order limiting the number of waterfowl they can raise on their property. It is not the function of this Court to examine the wisdom of the Board's decision if it is established that the Board acted

8

within its jurisdiction and that its action was not illegal. The District Court upheld the Board's decision and we find no abuse of discretion by the District Court.

As to the jurisdiction of this matter, we note the Schendels sought a review and reversal of the Board's decision regarding their land use. However, the Board acted on the administrative appeal and limited its jurisdiction and decision to purely factual zoning matters. The Schendels fail to address or support the argument that the Board lacked jurisdiction to review the decision of the building official.

While agricultural uses are permitted under Section 18.12.020, subparagraph B, Bozeman Municipal Zoning Code, subparagraph J of that same code section provides:

> Permitted uses in the R-S district are as follows:
>
> . . .
>
> J. The keeping of animals and fowl for family food production . . . : one horse, or one cow, or two sheep, or two goats, or ten rabbits, or thirty-six fowl (chickens, pheasants, pigeons, etc.), or six large fowl (ducks, geese, turkeys, etc.).

The ruling by the Board appears liberal in view of the "six large fowl (ducks, geese, turkeys, etc.)" language contained as a limitation factor in the code section.

An integral part of the Bozeman Municipal Zoning Code is Chapter 18.66, entitled Board of Adjustment. Section 18.66.030 defines the powers and duties of the Board and states:

> A. The Board shall set its operating rules in accordance with MCA § 76-2-323, 1981, and shall have the following powers.

9

1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this act or of any ordinance adopted pursuant thereto.

2. To authorize upon appeal in specific cases such variance from the terms of this title as will not be contrary to the public interest, where owing to special conditions, a literal enforcement of the provisions will result in unnecessary hardship, and so that the spirit of this title shall be observed and substantial justice done.

. . .

The Board has the authority to hear appeals from the decisions of municipal administrative officers, which is the fact situation here. Section 18.66.060 of the Bozeman Municipal Zoning Code sets forth the criteria the Board must use when considering appeals. In approving applications of appeal, the Board designates such lawful conditions as will secure substantial protection for the public health, safety and general welfare. That section also provides that the Board's findings and its decision will not be inconsistent with the intent and purpose of the Code. Similarly, the lawful conditions stated in any approval may include time periods and "[a]ny other conditions as will make possible the development of the City in an orderly and efficient manner and in conformity with the intent and purpose set forth in this chapter." Section 18.66.060, subparagraph D(4), Bozeman Municipal Zoning Code.

We find the Board lawfully set forth limitations on the number of waterfowl allowed on the Schendels' property and

set a time limit for resolution of the matter in accordance with the specific statutory and ordinance mandates.

This Court has repeatedly held that statutes and ordinances will not be read so narrowly as to restrict the plain meaning of the whole law. See, Montana Automobile Association v. Greeley (Mont. 1981), 632 P.2d 300, 306, 38 St.Rep. 1174, 1180, where this Court stated:

> If possible, subsections of a statute should be construed in a manner that will give effect to them all. . . This Court must reconcile conflicting statutory provisions and make them operative in accordance with the legislative intent, insofar as it is possible to do so . . . (Citations omitted.)

This Court has established the rule of statutory construction that a statute derives its meaning from the entire body of words taken together. See, Crist v. Segna (Mont. 1981), 622 P.2d 1028, 38 St.Rep. 150; Darby Spar, Ltd. v. Department of Revenue (1985), 217 Mont. 376, 705 P.2d 111; and Wyse v. District Court (1981), 195 Mont. 435, 636 P.2d 865.

The Schendels' operation of a large noncommercial, waterfowl production facility presented the Board with an unusual situation. Clearly, under § 18.66.060 of the Bozeman Municipal Zoning Code, the Board rendered its decision by balancing the interests of the Schendels against the interests of upholding the zoning ordinance as a whole. In view of these facts, the District Court found the Board acted within its jurisdiction and that its decision was not illegal.

We hold that the Board of Adjustment had jurisdiction to place the restrictions as to the number of waterfowl and

11

we affirm the decision of the District Court that the Board acted within its jurisdiction and in accordance with Montana law.

The decision of the District Court is affirmed.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_John C. Sheehy_

_William E. Hunt_
Justices

Mr. Justice Fred J. Weber specially concurs as follows:

I concur in the result reached by the majority that the Board of Adjustment has the power to reasonably restrict the number of waterfowl on plaintiffs' property. However, I do not agree that the Board's analysis of plaintiffs' use of property was correct. I would therefore have reached the same conclusion but for different reasons.

Under the Bozeman Municipal Zoning Code, Section 18.04.020(b), agricultural use is defined as follows:

> Agricultural means the tilling of soil, the raising of crops, horticulture and gardening, dairying or animal husbandry, including customary uses incidental thereto, but not including any agricultural industry or business such as fruit, plants, fur farms, animal hospitals, commercial feed lots, or similar use.

The Board concluded that the caring for wild waterfowl constituted an agricultural use. In apparent contradiction, the Board later concluded that the caring for wild waterfowl was similar to the keeping of fowl for family food production, and granted a variance under subsection J of the Zoning Code. While I disagree with the use of subsection J, I would approve the Board's conclusion for the following reasons:

The definition of agricultural use under the Zoning Code emphasizes that it does <u>not</u> include agricultural industry or business such as fruit, plants, fur farms, animal hospitals, commercial feed lots, or similar use. The drafters recognized that these types of agricultural industry or business use might be thought of as being agricultural use but concluded that such use did not qualify as agricultural use under this Zoning Code. I would conclude that the raising of wild waterfowl is similar to such things as fur farms and animal hospitals and that it could be classed as a "similar

13

use" as mentioned at the end of the agricultural use definition. This would of course mean that a variance would be required before the Schendels would be allowed to proceed with such a business.

The function of a variance is to grant relief to a property owner against strict compliance with the general law. See 101 C.J.S. Zoning, § 269. Montana case law has established that the following conditions be present before the granting of a variance is proper: (1) the variance must not be contrary to the public interest; (2) a literal enforcement of the zoning ordinance must result in unnecessary hardship owing to conditions unique to the property; and (3) the spirit of the ordinance must be observed and substantial justice done. Cutone v. Anaconda Deer Lodge (1980), 187 Mont. 515, 521, 610 P.2d 691, 695. I would conclude that these conditions have been met in the present case. I would therefore affirm the decision of the Board to limit the number of wild waterfowl on the Schendels property, concluding that it was an appropriate variance on the above described agricultural use theory. I agree with the majority that substantial justice was achieved by the decision of the Board.

_____
Justice