No. 01-539

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 96N

IN RE THE MATTER OF

JAMES DOODY AND NOVA SCOTIA LAND
COMPANY, LLC, and JON MARCHI,

        Petitioners/Appellants,

   and

CITY OF GREAT FALLS,

        Respondent/Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Sunday Z. Rossberg, Rossberg Law Office, L.L.C., Great Falls, Montana

        For Respondent:

                Mark Higgins, Attorney at Law, Great Falls, Montana

           Submitted on Briefs: January 24, 2002

                   Decided:  May 9, 2002

Filed:

_____
                     Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 James Doody, Nova Scotia Land Company, LLC, and Jon Marchi (collectively, the "Appellants") appeal from an Order issued by the Eighth Judicial District Court, Cascade County, affirming a determination by the Board of Adjustment for the City of Great Falls, Montana. We affirm.

¶3 The following issues are dispositive of this appeal:

¶4 1. Did the District Court abuse its discretion when it refused to take additional evidence or appoint a referee to take additional evidence?

¶5 2. Did the District Court err as a matter of law when it ruled that the Board of Adjustment acted within the framework of the law?

¶6 3. Did the District Court err when it failed to consider evidence outside the record when considering the Appellants' claim that the City's condemnation process was arbitrary and capricious?

BACKGROUND

¶7 This dispute centers on real property, commonly known as the Linden Terrace Apartments, in Great Falls, Montana. On October 1,

1999, the Building Official for the City of Great Falls, Jeff Jenkins, sent the owner of the Linden Terrace Apartments, Jon Marchi, a letter (the "Original Notice") notifying him that he had determined that the apartments were substandard and a public nuisance and ordered them to be repaired or demolished. The letter went on to state that the condition of the apartments endangered "life, health, property or safety of the public or its occupants."

¶8    During the fall of 1999, Marchi negotiated with James Doody, the President of Nova Scotia Land Co., LLC, for the sale of the Linden Terrace Apartments.    During the negotiations, Marchi instructed Doody to "take all appropriate action regarding the condemnation and demolition of the property" and to respond to the letter from Jenkins. Doody faxed a letter, dated October 27, 1999, to Jenkins outlining his plans for repair and occupancy of the apartment, along with a request for Jenkins to retract the order for demolition.

¶9    In a letter dated October 28, 1999, Jenkins responded that the condemnation notice would remain in effect.    In December 1999, Doody submitted a request to appeal the Building Official's Order of Condemnation.    The City of Great Falls responded in a letter, dated December 30, 1999, that Doody's opportunity for appeal had expired on November 21, 1999, and that the City intended to proceed with the demolition.    It also revoked Doody's permit application because the application was not acceptable to repair the structure. In a letter dated February 11, 2000, the City informed Doody that he did not have standing to appeal the Order of Condemnation

3

because he had no interest of record in the Linden Terrace Apartments.

¶10 On February 29, 2000, the Appellants filed a Petition for Preliminary Injunction; Temporary Restraining Order; and Writ of Mandamus. They requested that the District Court temporarily enjoin and restrain the City of Great Falls from proceeding with the demolition of the Linden Terrace Apartments. The Appellants also asked the court to permit Doody and Marchi to appeal the Order for the Demolition of the Linden Terrace Apartments and the City's revocation of the building permit application.

¶11 The court issued a Temporary Restraining Order on February 29, 2000. After conducting a hearing on March 15, 2000, the District Court held that the time to appeal the City's decision that the Linden Terrace Apartments were substandard and a public nuisance had elapsed. It concluded, however, that the City had waived the 60-day time limit for submitting building permit applications. Therefore, the City had to re-notice the building permit requirement in order to recommence the 60-day time limit.

¶12 On April 18, 2000, the City of Great Falls sent a letter (the "Re-Notice") to Marchi stating that it was "re-noticing that the structure be repaired or demolished and orders that a permit to repair or raze the structure be obtained within sixty (60) days from the date of this letter." The Appellants appealed the Re-Notice to the Board of Adjustment on May 19, 2000. Following a hearing on August 10, 2000, the Board issued Findings and

4

Requirements of Compliance on September 5, 2000, denying the Appellants' appeal.

¶13 On October 9, 2000, the Appellants sought a Petition for Appeal from Board of Adjustment Decision from the District Court. The court held a hearing on May 21, 2001, and issued its Order affirming the Board's decision and dismissing the Appellant's appeal on June 21, 2001. The Appellants appeal the court's Order.

STANDARD OF REVIEW

¶14 A district court may only set aside a board of adjustment's decision if a party shows that the board abused its discretion. *See Schendel v. Board of Adjustment* (1989), 237 Mont. 278, 283, 774 P.2d 379, 382. When reviewing the district court's decision to affirm or reverse an administrative decision, we will then employ the same standard. *See Marble v. State, Dept. of Health and Human Servs.*, 2000 MT 240, ¶ 16, 301 Mont. 373, ¶ 16, 9 P.3d 617, ¶ 16.

ISSUE ONE

¶15 Did the District Court abuse its discretion when it refused to take additional evidence or appoint a referee to take additional evidence?

¶16 A district court may grant a writ of certiorari to review a decision of a board of adjustment. *See* § 76-2-327(2), MCA. If it appears to the court that "testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence." Section 76-2-327(3), MCA. A district court may, at its discretion, decide not to take additional evidence if it appears that additional evidence is

5

unnecessary to properly decide the matter.  *See Mack T. Anderson Ins. Agency, Inc. v. City of Belgrade* (1990), 246 Mont. 112, 121, 803 P.2d 648, 653.

¶17  The Appellants argue that additional evidence was necessary because errors plagued the transcript of the Board of Adjustment hearing.  Asserting that the transcript was inherently unreliable, they argue that the District Court erred by admitting it.  In making their argument, however, the Appellants do not indicate how the transcript differed from the actual proceedings or how the transcript tainted the court's ultimate decision.  The Appellants also fail to show what information the District Court lacked. Interestingly, the Appellants never requested a transcript of the Board of Adjustment hearing; the City of Great Falls ordered the transcript.  Furthermore, the Appellants did not request that the court listen to the tape of the hearing.  Their failure to request a transcript or ask the court to listen to a tape of the transcript undermines the Appellants' claim that an incomplete record of the hearing prejudiced their case.

¶18  In *Anderson*, we ruled that declining to take additional evidence was within the district court's discretion where it had documents and maps submitted by both parties, oral testimony, the board of adjustment's written decision and a tape of the board's meeting.  *See Anderson*, 246 Mont. at 121, 803 P.2d at 653-54. Notably, no written transcript was present in *Anderson*.  Here, in addition to the transcript, the court had the pre-hearing briefs of both parties, numerous related documents, including the Board's

6

written decision, and oral arguments from both sides. Therefore, we conclude that the District Court did not abuse its discretion in declining to admit additional evidence or appoint a referee.

ISSUE TWO

¶19 Did the District Court err as a matter of law when it ruled that the Board of Adjustment acted within the framework of the law?

¶20 The Appellants argue that the Board of Adjustment failed to follow the Uniform Code of Abatement of Dangerous Buildings (the "Uniform Code"). They contend that the Board failed to find that the Linden Terrace Apartments were dangerous. Judge Neill, however, held that the Appellants' time to appeal this issue had expired. The Appellants never appealed this conclusion. Judge Neill further held that the Appellants' attempts to re-open the issue of dangerousness were res judicata. The Appellants, however, claim that the Re-Notice operated as an entirely new notice, which therefore entitled them to an appeal on all of the underlying issues, particularly that of a finding of "dangerousness." In particular, they assert that the Re-Notice added new requirements to those previously listed in the Original Notice.

¶21 Despite the Appellants' assertions, we fail to note any appreciable difference between these two notices. The Re-Notice required that the "application must be submitted by you or your representative to repair the items listed to standards required by the Uniform Building Code, Uniform Plumbing Code, Uniform Mechanical Code and National Electrical Code." The Original Notice, on the other hand, stated that "[t]he submittal will be

7

reviewed for compliance with the applicable code regulations and, if satisfactory, approved for permit issuance." The difference between stating "applicable code regulations" and setting out the applicable code regulations is, at most, one of semantics.

¶22 The Appellants also contend that the Board of Adjustment "nearly violated every provision" of the Uniform Code. In particular, the Appellants assert that the Board violated their rights under § 604.6 of the Uniform Code to examine witnesses and introduce other evidence. They claim that the Board's failure to consider witness testimony and require the production of documents essentially precluded discovery. We disagree.

¶23 Section 603.1 of the Uniform Code states that the Board "may obtain the issuance and service of a subpoena for the attendance of witnesses or the production of other evidence at a hearing . . . upon the written demand of any party." When interpreting a statute, we give words and phrases their plain, ordinary and usual meaning. *See Goyen v. City of Troy* (1996), 276 Mont. 213, 221, 915 P.2d 824, 829. We have long held that use of the word "may" denotes a permissive or discretionary choice. *See In re Minder's Estate* (1954), 128 Mont. 1, 9-10, 270 P.2d 404, 409. Thus, while a party may request subpoenaed witnesses and documents, the Board decides to accept such requests at its own discretion.

¶24 The Appellants imply that the Board refused to hear testimony of five subpoenaed city employees by quashing the subpoenas. The City points out, however, that the Board quashed only the subpoena for the Assistant City Manager because she was out of town and a

different subpoenaed witness was available and possessed the same information. The Appellants never called any other subpoenaed witness to testify. Instead, they asked to cross-examine the building inspectors regarding dangerousness. The Board denied this request on the grounds that any issues relating to dangerousness were res judicata.

¶25 While the Appellants' claim that the Board either quashed or ignored their requests set forth in subpoenas, they specifically cite only the Board's refusal to require the production of all permit applications issued by the City of Great Falls where the plans were not prepared and designed by an engineer or architect licensed by the State of Montana. When opposing this request at the hearing, the City explained to the Board that such a request involved at least 4,200 applications and would take the staff of the Community Development Department 43 weeks to produce them. After a dialogue between the Board and the parties, the Board granted the City's request for a protective order. The Appellants do not dispute that this was their only request for subpoenaed documents.

¶26 On appeal, the Appellants offer no suggestion why the Board's individual decisions concerning witness testimony or document production were incorrect. Instead, they intimate that the Board's actions precluded the Appellants from conducting any discovery. In each case, the Board had a rational basis to decide against the Appellants' discovery requests. Such decisions were within the Board's discretion.

¶27 The District Court examines the wisdom of the Board's decision to see if the Board acted within its jurisdiction and its actions were not illegal. *See Schendel*, 237 Mont. at 283, 774 P.2d at 382. The Appellants do not contest the Board's jurisdiction and can offer no evidence that the Board acted illegally other than pointing to the fact that the Board declined to hear certain evidence, which was within its discretion to do. Therefore, we conclude that the District Court was within its discretion in concluding that the Board acted within the law.

ISSUE THREE

¶28 Did the District Court err when it failed to consider evidence outside the record when considering the Appellants' claim that the City's condemnation process was arbitrary and capricious?

¶29 The Appellants argue that the City's condemnation process was arbitrary and capricious. In support of their argument, the Appellants cite *Skyline Sportsmen's Ass'n v. Board of Land Comm'rs* (1997), 286 Mont. 108, 951 P.2d 29, for the proposition that a district court must review all of the underlying facts to decide whether a lower court acted in an arbitrary or capricious manner. The City points out, however, that the Appellants do not cite authority that supports their assumption that the District Court should have examined the City's condemnation process under an arbitrary and capricious standard. We agree; the Appellants misapply the District Court's scope of review.

¶30 The District Court reviews the decisions of the Board of Adjustment, not the decisions of the City. *Compare* § 76-2-326, MCA

10

(authorizing appeals from administrative officers to the Board of Adjustment) *with* § 76-2-327, MCA (authorizing appeals from the Board of Adjustment to a court of record). So long as the Board of Adjustment acted within its discretion when reviewing the City's actions, the District Court must uphold the Board's decisions. *See Schendel*, 237 Mont. at 283, 774 P.2d at 382. Therefore, we conclude that the District Court did not err by not considering evidence outside the record.

¶31 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JIM RICE