FILED

08/01/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0016

DA 17-0016

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 186

TODD CARLSON,

       Petitioner and Appellant,

  v.

YELLOWSTONE COUNTY
BOARD OF ADJUSTMENT,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 15-1536
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Thomas J. Stusek, Stusek Law Firm, P.C., Bozeman, Montana

       For Appellee:

           Daniel L. Schwarz, Mark A. English, Deputy Yellowstone County
Attorneys, Billings, Montana

Submitted on Briefs:  June 21, 2017

Decided:  August 1, 2017

Filed:

                        _____
                                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Todd Carlson began construction on a detached garage on his property in a subdivision outside of Billings, Montana, without first obtaining a zoning compliance permit. The garage's size and setbacks from the property line violated county zoning regulations. Carlson requested a variance from the Yellowstone County Board of Adjustment (Board). The Board held a public hearing and denied the variance request. Carlson appealed to the District Court. The District Court upheld the Board's decision. We consider on appeal whether the District Court abused its discretion in affirming the Board's denial of Carlson's variance request.

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Carlson employed a contractor in the spring of 2015 to construct a detached garage on his property. The property is located in a residential subdivision in Yellowstone County outside of the Billings city limits. The garage was over eighteen feet tall, spanned 2,140 square feet, and was situated with side and rear setbacks of three and one-half feet from the property line.

¶4 The subdivision in which Carlson lives is subject to Yellowstone County zoning regulations. Section 27-310(j) of the City of Billings and Yellowstone County Jurisdictional Area Unified Zoning Regulations (Unified Zoning Regulations) requires, among other things, that detached garages over eighteen feet tall maintain eight-foot side and rear setbacks from the property line and that a garage on a property the size of

2

Carlson's be no larger than 1,238 square feet. Neither Carlson nor his contractor applied for a zoning compliance permit before beginning construction.

¶5 Carlson's next-door neighbor, Jason Frank, filed a complaint with the Yellowstone County Code Enforcement Office due to the close proximity of Carlson's garage to Frank's fence. A Code Enforcement Officer responded by investigating Carlson's property. The officer informed Carlson that the garage violated county zoning regulations and advised him to cease construction until he could come into compliance. Carlson continued construction on the garage nonetheless.

¶6 Carlson applied to the County Planning Division in late April 2015 for a zoning permit to build his garage. On May 11, 2015, the Planning Division sent Carlson a letter denying his permit request because his garage violated the size and setback requirements of § 27-310(j) of the Unified Zoning Regulations. The letter informed Carlson that he could apply for a variance with the Board.

¶7 Carlson petitioned the Board for a variance on August 3, 2015—eighty-four days after receiving the Planning Division's letter—to allow him to complete construction of his garage. The Board scheduled a public hearing on Carlson's variance request for September 10, 2015, postponed the hearing twice, and then finally held the hearing on October 29, 2015.

¶8 At the variance hearing, the Board heard testimony from numerous witnesses, including Carlson, his attorney, his contractor, some of his neighbors, and County staff who had investigated Carlson's property. The Planning Division recommended denial of Carlson's variance, based on its investigation of Carlson's property and other properties

in the surrounding area. Nicole Cromwell, the Zoning Coordinator for the Planning Division, and others testified that Carlson began construction on his garage before acquiring the required permit, that he submitted a permit request, that the request was denied, that Carlson was informed he could apply for a variance, and that he continued construction despite being advised that the garage violated zoning regulations.

¶9 Carlson testified that he needed the detached garage in order to store his valuable car collection and that the garage was of high quality and was aesthetically pleasing. He alleged that other structures in his subdivision violated zoning regulations and that his garage was not unique in this regard. Carlson submitted photographs of his property and of neighboring properties to the Board. He testified that he was not initially aware that he needed a permit, and that he had relied on his concrete contractor to comply with any relevant regulations. Carlson argued that it would cause him significant hardship to have to tear down the garage, in which he had invested approximately $40,000 to $50,000.

¶10 Frank, Carlson's next-door neighbor, testified that the proximity of the tall garage to his property created a safety hazard of snow and ice falling into his backyard. Another neighbor testified that Carlson's garage was constructed over a utility right-of-way for sewer and water lines.

¶11 At the close of public testimony, the Board members discussed Carlson's request. The members expressed concern about the economic waste of Carlson tearing down his nearly-completed garage, but also noted that Carlson had not done his due diligence and had carelessly disregarded zoning regulations. The Board noted the garage's close proximity to the property line and its presence over the utility right-of-way. One member

4

voiced concern that granting the variance would set a precedent of the Board permitting significant deviations from the zoning regulations. At the close of discussion, the Board voted unanimously to deny Carlson's variance request.

¶12 Carlson appealed the Board's denial to the Thirteenth Judicial District Court. The court determined that Carlson had not met his burden of showing that the Board abused its discretion in denying his request for a variance, and it affirmed the Board's decision. The court explained that its "responsibility is not to examine the 'wisdom' of the [Board's decision], but to give it deference so long as the evidence shows the [Board] acted legally and within its jurisdiction, which is precisely what it did when it denied Carlson's variance." Carlson appeals.

## STANDARDS OF REVIEW

¶13 A district court reviews a board of adjustment's decision for an abuse of discretion. *Flathead Citizens for Quality Growth, Inc. v. Flathead Cnty. Bd. of Adjustment*, 2008 MT 1, ¶ 32, 341 Mont. 1, 175 P.3d 282 (hereafter "*Flathead*"). A board abuses its discretion when it relies for its decision on information so lacking in fact and foundation that it is clearly unreasonable. *Flathead*, ¶ 32. A court does not examine the wisdom of a board's decision if it is established that the board acted within its jurisdiction and that its action was not illegal. *Schendel v. Bd. of Adjustment*, 237 Mont. 278, 283, 774 P.2d 379, 382 (1989). We review a District Court's affirmation of a board of adjustment's decision for an abuse of discretion. *Schendel*, 237 Mont. at 283, 774 P.2d at 382.

**DISCUSSION**

¶14 *Whether the District Court abused its discretion in affirming the Board's denial of Carlson's variance request.*

¶15 As an initial matter, Carlson argues for the first time on appeal that the Board and the District Court erroneously required that he show that denial of his variance would cause him "unnecessary hardship." Carlson claims that the "unnecessary hardship" standard applies only to "use" variances, but that his request was for an "area" variance, which required the less burdensome showing of a "practical difficulty." "[T]his Court generally will not address an issue or new legal theory raised for the first time on appeal. We will not unfairly fault a trial court for failing to rule correctly on an issue that it was not asked to consider." *Ryffel Family P'ship v. Alpine Country Constr., Inc.*, 2016 MT 350, ¶ 24, 386 Mont. 165, 386 P.3d 971 (internal citations omitted). Carlson did not present this argument to the District Court. We therefore decline to address it.

¶16 Carlson contends also that the various factors that this Court employs to determine whether a variance should have been granted weigh in his favor. He argues that the economic hardship he will endure if he has to tear down his garage was not self-inflicted and that the Board failed to consider equitable principles underlying his claim.

¶17 "Montana case law clearly establishes that the following conditions must be present before the granting of a variance is proper: (1) The variance must not be contrary to the public interest; (2) a literal enforcement of the zoning ordinance must result in unnecessary hardship owing to conditions unique to the property; and (3) the spirit of the ordinance must be observed and substantial justice done." *Cutone v. Anaconda Deer*

6

*Lodge*, 187 Mont. 515, 521, 610 P.2d 691, 695 (1980). A board of adjustment "is bound to apply" the relevant zoning regulations. *Flathead*, ¶ 37. A board may not "disregard the provisions of, nor exceed the powers conferred by, a zoning ordinance and must act in accordance with the law." *Flathead*, ¶ 37 (citation and internal quotations omitted).

¶18 Section 27-1506(d) of the Unified Zoning Regulations states, in relevant part, that the Board must determine the following before it grants a variance request:[1]

(1) That special conditions and circumstances exist which are peculiar to the land, the lot or something inherent in the land which causes the hardship, and which are not applicable to other lands in the same district;

(2) That a literal interpretation of the provisions of this chapter would deprive the applicant of rights commonly enjoyed by other tracts in the same district;

(3) That granting the variance requested will not confer on the applicant any special privilege that is denied by this chapter to other land in the same district; [and]

(4) That the granting of the variance will be in harmony with the general purpose and intent of this chapter and with the comprehensive plan.

¶19 The Board issued findings in conjunction with its denial of Carlson's variance request in which it addressed the criteria of § 27-1506(d). Based on the testimony and evidence before it, the Board determined that Carlson did not satisfy the criteria.

¶20 As to the first criterion, the Board reasoned that Carlson's hardship—the economic waste of tearing down a partially-built garage—was not a hardship that was peculiar to

---

[1] This section of the Unified Zoning Regulations lists a total of seven criteria that the Board must determine, the final three of which apply only in cases in which the Board grants a variance. Because the Board denied Carlson's variance, those three criteria are not relevant here.

his land. The record before the Board supports its determination that Carlson's hardship was strictly economic and was not due to any conditions unique to his property.

¶21 As the Board observed, the "practical difficulties" Carlson urges are in large part due to his own actions. He began construction without first requesting a zoning compliance permit, and he continued construction even after he was informed that his garage did not comply with zoning regulations. Carlson acknowledges that he had the garage framed in and nearly enclosed by the time the Board considered his application in October, for the stated reason that he wanted to complete the structure before winter. Carlson's contractor's failure to seek a permit and Carlson's decision to proceed with construction—not anything inherent in Carlson's land—caused his hardship. Carlson thus failed to satisfy this first criterion. He was unable to show that "a literal enforcement of the zoning ordinance [would] result in *unnecessary* hardship *owing to conditions unique to the property*." *Cutone,* 187 Mont. at 521, 610 P.2d at 695 (emphasis added).

¶22 In examining the second criterion, the Board concluded that literal interpretation of the zoning regulations would not deprive Carlson of any right enjoyed by nearby property owners. Carlson presented photographs to the Board depicting other zoning violations in his neighborhood; he acknowledged that the Board had not granted variances in those cases and did not present other evidence of the circumstances of the construction on those properties. Carlson presented no evidence that the Board previously had granted variances similar to the one he requested. The Board noted that it had granted variances for oversized, detached garages, but that it had permitted a

maximum size of 1,500 square feet—far less than Carlson's 2,140-square-foot garage. The evidence presented to the Board substantiated its conclusion that Carlson did not satisfy this criterion.

¶23    As to the third criterion, the Board found that granting Carlson's variance would improperly confer a special privilege on him. The Board noted that it had never granted variances for such significant deviations from the zoning regulations as Carlson requested. It reasonably determined, based on its knowledge of the zoning regulations and its history of approving variances, that to grant Carlson's request would unfairly allow him—but not others in the area—to deviate substantially from the zoning regulations.

¶24    Finally, under the fourth criterion, the Board concluded that Carlson's variance would conflict with the general purpose of the zoning regulations. Based on its assessment of Carlson's and the surrounding properties, the Board found that the detached garage was exceptionally large and "out of character with the surrounding residential properties." Although Carlson substantiated his position with evidence that his garage was well-built and aesthetically pleasing, he did not dispute that it violated the size and setback requirements, or that it was considerably larger than other structures the Board had permitted. The factors that the Board addressed in its decision adequately account for the equitable considerations that Carlson argues. The testimony and evidence concerning the nature of Carlson's and other nearby properties supports the Board's conclusion.

¶25 The District Court properly declined to second-guess the Board's discretionary determinations. The record before the Board substantiated its rationale in denying Carlson's request for a variance. Carlson failed to demonstrate that he was legally entitled to the relief he requested. *See Cutone*, 187 Mont. at 521, 610 P.2d at 695. Carlson cites a number of our cases to support his position, including *Rygg v. Kalispell Board of Adjustment*, 169 Mont. 93, 544 P.2d 1228 (1976), *Lambros v. Board of Adjustment of City of Missoula*, 153 Mont. 20, 452 P.2d 398 (1969), and *Freeman v. Board of Adjustment of City of Great Falls*, 97 Mont. 342, 34 P.2d 534 (1934). These cases recognize that a board of adjustment's decision on a variance request is a case-by-case, fact-specific inquiry, and they do not show that the Board abused its discretion in Carlson's case. The Board acted "in accordance with the law," and its decision was not "so lacking in fact and foundation that it [was] clearly unreasonable." *Flathead*, ¶¶ 32, 37.

## CONCLUSION

¶26 We conclude that the District Court did not abuse its discretion when it upheld the Board's denial of Carlson's variance request. *See Schendel*, 237 Mont. at 283, 774 P.2d at 382. We therefore affirm the District Court's order.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JIM RICE