DANIEL P. LAMBROS, Sophia Lambros, his wife, et al., Plaintiffs and Respondents, v. BOARD OF ADJUST- MENT OF CITY OF MISSOULA, Defendant and Appel- LANT.

No. 11532.
Submitted March 11, 1969.
Decided April 3, 1969.
452 P.2d 398.

Fred C. Root, Victor F. Valgenti (argued), Missoula, for defendant and appellant.

Garlington, Lohn & Robinson, Sherman V. Lohn (argued), Missoula, for plaintiffs and respondents.

MR. JUSTICE JOHN CONWAY HARRISON delivered the Opinion of the Court.

Plaintiffs brought this action in the district court by petition and stipulation appealing a decision of the defendant Board of Adjustments of City of Missoula (hereinafter referred to as the Board). After rendering judgment, the district court reopened the case, heard additional evidence, entered new findings of fact and conclusions of law and issued identical judgment. From both judgments, in favor of the plaintiffs and reversing the action of the Board, the Board appeals.

· On December 20, 1967 plaintiffs, hereinafter referred to as respondents, applied to the City of Missoula for a building permit to construct a shopping center complex upon the following described real property:

All of Block Ten (10), BECK'S HOME ADDITION, a platted subdivision, according to the official plat thereof, as filed in the Clerk and Recorders Office, Missoula County, Montana.

The subject property is situated within the boundaries of an "A" residential district, which zoning classification does not include the proposed construction as a permissive use. Pursuant to such zoning classification, the building permit application was denied by the city building inspector. The respondents then petitoned the Board for a variance from the established zoning classification. A public hearing was held and the Board denied the variance.

Respondents then appealed to the district court. The cause was submitted on the bare record of the Board by stipulation and briefs and without taking additional evidence. After the court rendered its first judgment reversing the Board and granting the variance, the Board filed several motions including a motion to amend the findings of fact and conclusions of law. At the time set for hearing on the Board's various motions the respondents moved to reopen the case and to offer additonal evidence. After hearing arguments on respondents' motion to reopen, the court heard the additional evidence and offered the Board an opportunity to put in additional evidence. The court then issued additional findings of fact and conclusions of law, substituting them for the original findings and conclusions. In its second judgment the court made the same decision, reversing the Board and granting the variance.

At the Board's hearing, and in the additional evidence presented to the lower court, the following facts were established.

The landowners acquired the subject property in 1948. It was annexed by the City of Missoula in 1959. Throughout this time the primary structure on this entire city block was a roller rink. Thus, when the property was zoned it contained a pre-existing nonconforming use. (The structure is presently recognized by all concerned to be an obvious eyesore.)

Counsel for the respondents graphically describes the property as follows: "For many years a disgraceful ruin has occupied Block 10, Beck's Home Addition. Known as the 'Roller Rink', this barn-like memorial to an ancient age stands as a

salient sore-thumb in an 'A' residential zone. However, it is blessed with the nomenclature of an 'existing non-conforming use' which guarantees its existence as long as two-by-fours can be propped under its sagging rafters and roller skates are listed in Christmas catalogs.

"It would be foolish indeed for any party to prophesy as to the likely livelihood of the 'Roller Rink'' inasmuch as it continues to operate today just as it has for the past decade. Suffice to say that its longevity is as indescribable.''

Three years previous to this action the Board of Adjustment did grant a variance for this parcel so that the landowners could build thereon an apartment and professional building complex. That project was discarded by the landowners and their associates when they were unable to get sufficent occupancy commitments prior to construction.

79% of the landowners within 300 feet, and 73% of the landowners abutting the proposed shopping center complex, approved the ordered variance at the time the Board was presented with the respondents' petition. At the time of the initial Board hearing a 10,000 seat athletic stadium was planned for directly across Higgins Avenue from the proposed complex. That stadium is now substantially complete.

The respondent landowners and their associates have made a binding agreement with several of their neighbors to construct the proposed center in accordance with specifications designed to maintain the premises in an orderly appearing manner. This agreement includes restrictions on signs and garbage and provides for hedges and bushes on three sides of the building, for the purpose of hiding from view the loading and trash collection aspects of the complex. The landowners and their associates *appear* willing to made curb cuts for access to the parking lot in such a manner as to restrict the traffic flow of the shopping center's patrons to South Higgins Avenue, the one main street bordering the complex, thus preventing an

increase in traffic flow on the side streets fronting the neighboring homes.

The property, as presently used for the roller rink, does not return sufficient income to the landowners. For example, taxes and a special assessment for 1967 amounted to $1,700 while the average income over the last 10 years has been approximately $2,000 per year. The property is not suitable for construction of single family residences. A realtor, one of the landowner's associates, testified that it has been very difficult to sell homes in this area, and the cost of building homes on this parcel, when weighed against the potential selling price, is too high. In fact other areas along South Higgins Avenue are likewise unsuitable for residential purposes. The evidence reveals that 13 out of 20 building sities in this area of South Higgins Avenue are businesses or building lots being held at business lot prices. The amount of traffic flow on South Higgins Avenue also makes it undesirable for residential property. The realtor testified that in his opinion the building of the shopping center would enhance the area for residential purposes.

The relationship between the landowners and their associates is, that the latter have an option to purchase the property from the landowners, pending the outcome of the action seeking the variance. Upon exercise of this option, a corporation would be formed, and the landowners would have a one-fourth interest in the corporation.

The following issues have been raised on appeal:

1. Was the reception of additional testimony after the first judgment error?

2. Does the evidence justify the grant of variance?

Considering the first issue, if the district court did err in hearing additional evidence after entering judgment, then the granting of the variance must rise or fall on the evidence before the Board; if it did not err then the additional evidence may be considered in support of the variance.

It must be remembered that this matter, as it was before the district court, is in its nature an appeal from the Board, with specific legislative authorization to take additional evidence. Section 11-2707 (11), R.C.M.1947. In addition the purpose for requiring a motion to amend findings is " * * * so that the trial court may have an opportunity to correct them." Stapp v. Nickels, 150 Mont. 220, 434 P.2d 141. We hold, under these specific circumstances, that the court did not abuse its discretion in fulfilling the options of the statute by taking · additional evidence thereby providing a basis for amplifying and expending its findings of fact.

The trial court can in the exercise of its discretion take the additional evidence contemplated by the statute. That it exercises this discretion in the face of objections to its original findings is in the interests of a just, speedy and inexpensive determination of the action. Rule 1, M.R.Civ.P. The Board was offered the opportunity to present evidence at the reopening, which it did not take. There was no basis for it to assume that its objections to the proceedings, if correct, would be moot if it offered its evidence. We can only think then, that it is relying entirely on its view that the variance should not have been granted, whatever the evidence.

The next issue to be determined is what test is to be applied to the decision of the district court in reversing the Board and granting the variance. The leading Montana case is Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534 (1934). It is there held that where no additional evidence is taken, the district court's function is simply to review the Board's determination to see whether there was an abuse of discretion. In the instant case the court took additional evidence. It has been held that where the enabling act permits a taking of additional evidence the test on appeal from the lower court is whether that court, not the Board, abused its discretion or committed an error of law. O'Neill v. Philadelphia Zoning Board of Adjustment, 384 Pa. 379, 120 A.2d 901 (1956). Agree-

26

ment with this rule is implied in the Freeman case where this Court said: "The district court did not abuse *its* discretion in affirming the order of the board." (Emphasis ours.)

We now hold that upon review of a determination by a district court where it is hearing a petition for variance and takes additional testimony the question for this Court to determine is whether the court committed an abuse of discretion. It is therefore only necessary to see whether in this case there is competent and substantial evidence to sustain the action of the lower court. Freeman v. Board of Adjustment, 97 Mont. 342, 356, 34 P.2d 534 (1934).

Under Freeman a petition for variance must meet three criteria. The variance must not be contrary to public interest. A literal enforcement of the zoning ordinance must result in unnecessary hardship, owing to conditions unique to the property. The spirit of the ordinance must be observed, and substantial justice done. These were found in the court's findings and it therefore committed no error of law. What remains is to see whether competent and substantial evidence exists to support such findings.

At the time this property was classified as residential "A" property, it already contained a business and thus was brought into the zoning plan as a nonconforming use. At the present time the structure on the property is an eyesore, and the complex that is to replace it will substantially conform to the look of the neighborhood. In addition 79% of the landowners within 300 feet of the property are in favor of the variance. The removal of an eyesore, and the change to a less objectional nonconforming use, when approved by such a high percentage of adjacent landowners, cannot be said to be contrary to the public interest.

The present owners of the land and the developer, a realtor, testified that using the property for residential purposes was not economically feasible. It was pointed out that a 10,000 seat stadium exists directly across the street from the property.

In addition, it appears from the whole of the record that the property is likely to lie idle if the variance is not granted. Today the prime purpose of the variance is to benefit the community and the individual property owner by assuring that property capable of being put to use, will not lie idle. See 74 Harvard Law Review 1396, Zoning Variances.

The only argument against the evidence of hardship is that it is not unique to the property in question. The Board would have us hold that respondents are seeking a rezoning of the property in the guise of a variance because other property situated in the same general area is not economically suitable for residential purposes. We would have to agree with the Board if that were the only aspect of hardship shown in this case. However, this property is nevertheless unique because of the stadium directly across from it and because it is a pre-existing nonconforming use. In so holding we are not unmindful of that fact the Board had previously granted a variance for this same property and must have at that time made a finding of hardship.

It is apparent from the above that the spirit of the ordinance is observed by the granting of the variance and substantial justice has been done. The judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL and BONNER, concur.