No. 97-475

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 127


IN RE PETITION OF SUTEY OIL COMPANY, INC.,

Petitioner and Appellant,

v.

ANACONDA-DEER LODGE COUNTY PLANNING
BOARD and THE ANACONDA-DEER LODGE
COUNTY BOARD OF ADJUSTMENT,

Respondents and Respondents.



APPEAL FROM:   District Court of the Third  Judicial District,
In and for the County of Anaconda-Deer Lodge,
The Honorable Ted L. Mizner, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Leonard J. Haxby; Haxby & Somers; Butte, Montana

For Respondents:

Michael B. Grayson; Anaconda-Deer Lodge County Attorney;
Anaconda, Montana



Submitted on Briefs: March 26, 1998

Decided: May 28, 1998
Filed:


_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

In June 1995, Sutey Oil Company, Inc., filed a petition for a writ of certiorari in the District Court for the Third Judicial District in Anaconda-Deer Lodge County, asking that the court review the Anaconda-Deer Lodge County Planning Board's and the Anaconda Deer Lodge County Board of Adjustment's denial of Sutey Oil's application for a special use permit. The District Court issued a writ of certiorari, and on July 3, 1997, issued an opinion and order affirming the denial of Sutey Oil's special use permit. It is from the court's July 3, 1997, order that Sutey Oil presently appeals. For the reasons stated below, we affirm.

The sole dispositive issue on appeal is whether the District Court abused its discretion in concluding that the Board of Adjustment did not abuse its discretion in denying Sutey Oil's application for a special use permit.

### FACTUAL AND PROCEDURAL BACKGROUND

Sutey Oil owns a business establishment known as the Thriftway Super Stop #7, located in Anaconda, Montana. In early 1994, David Sutey, the president of Sutey Oil, became interested in expanding his business by adding a room with four or five gambling machines. Sutey contacted the Anaconda-Deer Lodge County Planning Department, and spoke with permit official Scott H. Hurley about the possibility of adding gambling machines to his establishment. The record indicates that the two did not, however, discuss the possibility that Sutey might seek a beer and wine license.

On April 5, 1994, Hurley wrote to Sutey and advised him "that Thriftway Super Stops would not be required to file for and obtain a special use permit for the establishment of gambling machines" because the "establishment is deemed as an expansion of an existing retail and service use." Although Hurley did not specifically address the possibility that Sutey might be required to obtain a special use permit were he to seek a beer and wine license, Hurley did note that Thriftway would have to adhere to "all county and state requirements . . . before the commencement of any type of construction."

Sutey obtained a building permit and began remodeling his facility. On January 9, 1995, Sutey submitted an application to the State Liquor Division for a retail on-premises consumption beer and wine license. In March 1995, the State Liquor Division notified Anaconda-Deer Lodge County of Sutey's application to provide the county with "the opportunity to evaluate whether the applicant has met all laws and ordinances your office is responsible for regulating." It was upon receipt of this notice that the Anaconda-Deer Lodge County Planning Department first learned that the expansion proposed by Sutey would not only include gambling machines, but would also involve the issuance of a retail on-premises consumption beer and wine license.

On March 20, 1995, James Manning, the Planning Director of Anaconda-Deer Lodge County, advised the State Liquor Division that the county "would strongly protest the issuance of a on-premise license for Thriftway Super Stop of Anaconda #7." Manning explained that "an on-premise consumption license for this location would constitute a change in use for the premises," and that "to be in compliance with Zoning regulations, a

Special Use Permit would need to be approved by the Planning Board." Sutey received a copy of Manning's letter, and filed an application for a special use permit with Anaconda-Deer Lodge County on March 30, 1995.

7    On April 20, 1995, the Anaconda-Deer Lodge County Planning Board held a public hearing to address Sutey Oil's application for a special use permit. Following public comment, the Planning Board denied Sutey Oil's application. On April 21, 1995, Manning wrote a letter to Sutey Oil, explaining that the Planning Board had denied its application for a special use permit, and advising it of its right to appeal to the Anaconda-Deer Lodge County Board of Adjustment. Sutey Oil pursued an appeal, and on May 17, 1995, the Board of Adjustment held a public hearing during which it voted to uphold the Planning Board's decision.

8    On June 7, 1995, Sutey Oil filed a petition for a writ of certiorari in District Court, asking that the court review the Planning Board's and the Board of Adjustment's denial of its application for a special use permit. The District Court issued a writ of certiorari on October 11, 1995. On November 25, 1996, following review of the record and oral argument, the court issued an opinion rejecting Sutey Oil's equitable estoppel argument, but remanding the case "to the Planning Board for determination of the basis for denial of Petitioner's Special Use Permit."

9    The Planning Board met on December 2, 1996, and explained its "reason for denying the Special Use Permit for Sutey Oil, Thriftway West, to acquire an on-premise beer/wine license, is that it would be incompatible to neighboring land which is designated single family residential land use." On July 3, 1997, the District Court issued a second opinion and order in which it affirmed the Planning Board's denial of Sutey Oil's application for a special use permit.

                    STANDARD OF REVIEW

10   Pursuant to   27-25-102(2), MCA, the district court may grant a writ of certiorari, or writ of review
     when a lower tribunal, board, or officer exercising judicial
     functions has exceeded the jurisdiction of the tribunal, board, or
     officer and there is no appeal or, in the judgment of the court,
     any plain, speedy, and adequate remedy.


11   Ordinarily, the district court's scope of review upon a writ of certiorari "cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer." Section 27-25-303, MCA. In a case involving an appeal from a decision by the Board of Adjustment, however,   76-2-327, MCA, provides the district court with a broader scope of review than that generally available upon a writ of certiorari. For example,   76-2-327, MCA, provides, in pertinent part, as follows:
         (1) Any person or persons, jointly or severally, aggrieved
     by any decision of the board of adjustment or any taxpayer or
     any officer, department, board, or bureau of the municipality

may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. . . .

(2) Upon the presentation of such petition, the court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board of adjustment . . . .

(3) If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.

(4) The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

12 Although 76-2-327, MCA, contemplates relief by certiorari, it simultaneously authorizes the reviewing court to hold a hearing and reverse, affirm, or modify a decision made by the Board of Adjustment. In so doing, 76-2-327, MCA, clearly provides the district court with a broader scope of review than that generally available upon a writ of certiorari. See Bryant Development Ass'n v. Dagel (1975), 166 Mont. 252, 257, 531 P.2d 1320, 1323 (interpreting identical language in 16-1706, RCM (1947)). Thus, the District Court in this case was bound to review the Board of Adjustment's decision for an abuse of discretion.

13 Having identified the standard by which the District Court is bound to review the Board of Adjustment's decision, we must now determine the standard by which we are bound to review the District Court's decision. In so doing, we turn first to the terms of 76-2-327, MCA, which specifically empower the district court to "take evidence" if "necessary for the proper disposition of the matter." In Lambros v. Board of Adjustment of Missoula (1969), 153 Mont. 20, 26, 452 P.2d 398, 401, we held that "upon review of a determination by a district court where it is hearing a petition for variance and takes additional testimony the question for this Court to determine is whether the court committed an abuse of discretion." Indeed, in cases where the district court exercises its statutory option to take additional evidence, we have consistently reviewed the district court's decision for an abuse of discretion and to determine whether that decision is supported by substantial evidence. See, e.g., Whistler v. Burlington Northern R.R. Co. (1987), 228 Mont. 150, 155, 741 P.2d 422, 425 (noting that district court "received evidence indicating that the decision itself was reasonable," and holding the district court's conclusion was "supported by substantial, credible evidence"); Cutone v. Anaconda Deer Lodge (1980), 187 Mont. 515, 518, 610 P.2d 691, 693 (where district court "allowed the appellant a full hearing and testimony was introduced by both parties," we reviewed the court's decision for an abuse of discretion).

14 In the present case, review of the record indicates that the District Court did not take any additional witness testimony during the oral argument held on

September 18, 1996.  Although the court did not take any additional evidence during the parties' oral argument, the parties did supplement the record with affidavits from David Sutey and Brian Bossard.  Because the District Court exercised its statutory option and took additional evidence before making its decision, we review the District Court's decision for an abuse of discretion.

DISCUSSION

15  Did the District Court abuse its discretion  in concluding the Board of Adjustment did not abuse its discretion in denying Sutey Oil's application for a special use permit?

16   On appeal, Sutey Oil argues the District Court erred in upholding the Board of Adjustment's decision on several grounds.  Sutey Oil first argues that, pursuant to Chapter XII of the Anaconda-Deer Lodge County Development Permit System, its proposed gaming facility was a permitted use, and it was thus not required to obtain a special use permit.  Even assuming it were required to secure a special use permit, however, Sutey Oil argues the District Court erred in affirming the Board of Adjustment's decision in the absence of any evidence that the proposed expansion would materially or adversely impact any of the zoning regulation criteria set forth in   76-2-304, MCA, and recognized by this Court in Lowe v. City of Missoula (1974), 165 Mont. 38, 41, 515 P.2d 551, 552-53.  Finally, Sutey Oil argues Anaconda-Deer Lodge County was equitably estopped from denying Sutey Oil's application in light of permit official Hurley's initial opinion that Sutey Oil "would not be required to file for and obtain a special use permit for the establishment of gambling machines."  Based on the foregoing, Sutey Oil argues the District Court erred in affirming the Board of Adjustment's denial of its application for a special use permit.

A.    Necessity of special use permit

17   As noted, Sutey Oil first argues the provisions of the Anaconda-Deer Lodge County Development Permit System did not require that it obtain a special use permit in this case.  Sutey Oil points specifically to Chapter XII of the County's Development Permit System which governs development in the Highway Commercial Development District in which Sutey Oil's Thriftway Super Store is located.  Sutey Oil argues that the expansion it proposed constituted a permitted use pursuant to the provisions of Chapter XII, and asserts it was thus not required to obtain a special use permit. Because it did not need a special use permit, Sutey Oil argues, that the Planning Board subsequently denied its application "should have no legal effect upon Mr. Sutey's right to operate a gaming room and acquire an on-premise beer and wine license at his present commercial location."

18   In response, respondents note that Sutey Oil did not appeal the Development Permit System administrator's decision to require a special use permit in this case, but instead "agreed to follow the process and submitted an application for a special use permit."  Respondents assert that, because Sutey Oil did not appeal from the Development Permit System administrator's decision requiring that it obtain a special use permit, Sutey Oil failed to exhaust its administrative remedies on this issue.

19  Neither the District Court's initial order remanding this case to the Planning Board, nor its final decision affirming the Board of Adjustment's decision contain a discussion regarding the propriety of the Development Permit System administrator's decision requiring that Sutey Oil obtain a special use permit to proceed with its proposed expansion.  Moreover, nowhere does Sutey Oil dispute the respondents' assertion that it failed to exhaust its administrative remedies and is thus precluded from objecting on appeal to the requirement that it secure a special use permit.  In light of the foregoing, we decline to address Sutey Oil's argument that it should not have been required to secure a special use permit under the circumstances of this case.

B.    Review of Planning Board and Board of Adjustment decisions

20  Sutey Oil next argues the District Court erred in affirming the Board of Adjustment's decision denying its application for a special use permit because there existed no evidence that the proposed expansion would materially or adversely impact any of the statutory zoning regulation criteria set forth in 76-2-304, MCA, and recognized by this Court in Lowe, 165 Mont. at 41, 515 P.2d at 552-53.

21  Sutey Oil argues it was incumbent upon the Planning Board, in making its decision regarding Sutey Oil's application for a special use permit, to consider and comply with the following statutory provisions:

76-2-304. Purposes of zoning. (1) Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements.

(2)  Such regulation shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality.

22  Relying on our decision in Lowe, Sutey Oil argues the Planning Board was compelled to consider and comply with the criteria set forth in  76-2-304, MCA, in making its decision regarding Sutey Oil's application for a special use permit.  In Lowe, we concluded the district court had abused its discretion in upholding a decision by the Missoula City Council to adopt a rezoning ordinance.  Lowe, 165 Mont. at 41, 525 P.2d at 553.  In so concluding, we considered the twelve criteria set forth in  76-2-304, MCA, and held the factual information upon which the Missoula City Council had relied in adopting the rezoning ordinance at issue was so lacking, that its action, as well as that of the district court, constituted an abuse of discretion. Lowe, 165 Mont. at 41, 525 P.2d at 553.

23  In the present case, Sutey Oil argues the Planning Board's decision to deny Sutey Oil's application for a special use permit on the grounds that the

proposed use "would be incompatible to neighboring land which is designated single family residential land use," does not take into account the statutory criteria set forth in 76-2-304, MCA. Sutey Oil asserts "[t]here has been absolutely no evidence that the operation of on-premises gambling of the type that was to be used in this convenience store would materially or adversely impact any of those mandatory criteria outlined in 76-2-304, MCA." In light of the foregoing, Sutey Oil suggests, the Planning Board abused its discretion in denying Sutey Oil's application for a special use permit and the District Court erred in affirming the Board's decision.

24 Upon remand, the Planning Board explained that it was denying Sutey Oil's application because the proposed expansion "would be incompatible to neighboring land which is designated single family residential land use." Moreover, the Planning Board noted that "[t]he Public Hearing, held on April 20, 1995, clearly indicated that the adjoining neighborhood did believe that the beer/wine license would have a detrimental impact on the neighborhood designated for single family residential."

25 As discussed above, we review the District Court's order upholding the Board of Adjustment's decision for an abuse of discretion. Lambros, 153 Mont. at 26, 452 P.2d at 401. In its order affirming the Board of Adjustment's decision, the District Court rejected Sutey Oil's argument that it was necessary for the Planning Board to specifically evaluate each of the twelve criteria set forth in 76-2-304, MCA, before making a decision with respect to Sutey Oil's application. Instead, the court noted that the Planning Board had acted in accordance with the terms of its authority pursuant to the Anaconda-Deer Lodge County Development Permit System, which provides in pertinent part that:

> The purpose of the special use permit procedure is to implement the plan by requiring intensive public review of any development that may have a significant impact on the landscape setting, neighboring land uses, or public facilities and services, and requiring that such developments comply with performance standards designed to assure their compatibility with the landscape setting, neighboring land uses, and the capacity of public facilities and services.

26 By its terms, the County's Development Permit System required that the Planning Board ensure that proposed developments "comply with performance standards designed to assure their compatibility with . . . neighboring land uses." In denying Sutey Oil's application on the grounds of incompatibility with neighboring land use, the Planning Board was thus acting within its authority pursuant to the express terms of the County's Development Permit System.

27 In its order upholding the Board of Adjustment's decision, the District Court improperly identified its scope of review as that traditionally available upon a writ of certiorari, and thus primarily discussed the question of whether the Planning Board had acted legally and within its jurisdiction in denying Sutey Oil's application for a special use permit. Although the court set forth

the incorrect standard of review, it nevertheless concluded that the Planning Board "had sufficient information upon which to base its denial of Petitioner's Special Use Permit." That the court so concluded indicates it additionally reviewed the Planning Board's decision for an abuse of discretion.

28 Although the District Court did not discuss the basis for its determination that the Planning Board had sufficient information upon which to base its decision, review of the record indicates the court did not abuse its discretion in so concluding. More specifically, the minutes from the Planning Board's April 20, 1995, public meeting chronicle testimony from a number of citizens concerned about the impact of the proposed expansion. For example, citizens voiced concerns regarding property values, increased traffic, parking problems, and raising their children in the vicinity of an establishment licensed to serve alcoholic beverages. Having reviewed the record, we conclude the District Court did not err in holding the Planning Board had sufficient evidence before it upon which it could base its decision denying Sutey Oil's application for a special use permit. Accordingly, we hold the District Court did not abuse its discretion in upholding the Board of Adjustment's decision.

C. Equitable estoppel

29 Sutey Oil points to the District Court's November 25, 1996, order and argues the court erred in concluding Anaconda-Deer Lodge County was not equitably estopped from denying Sutey Oil's request for gaming machines in light of permit official Hurley's initial opinion that Sutey Oil "would not be required to file for and obtain a special use permit for the establishment of gambling machines."

30 Respondents, in contrast, argue that the District Court's review upon a writ of certiorari "cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer." Section 27-25-303, MCA. Respondents thus assert that "equitable estoppel is not an available remedy" in light of the limited scope of review available pursuant to a writ of certiorari.

31 Having already recognized that the scope of review available upon an appeal from a decision by the Board of Adjustment is broader than that generally available upon a writ of certiorari, we will turn to the merits of Sutey Oil's argument.

32 In its November 25, 1996, order, the District Court held that, were it "to consider equitable estoppel, it would find in favor of Respondent." More specifically, the court determined that Sutey Oil had failed to demonstrate "conduct, acts, language, or silence amounting to a representation or a concealment of material facts," and had thus failed to demonstrate the first element of equitable estoppel.

33 In Dagel v. City of Great Falls (1991), 250 Mont. 224, 234, 819 P.2d 186, 192, we indeed recognized that one of the six essential elements of equitable estoppel is that "there must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts." In the present case, although Hurley initially advised Sutey Oil that it "would not be

required to file for and obtain a special use permit for the establishment of gambling machines," he also instructed Sutey Oil to adhere to "all county and state requirements . . . before the commencement of any type of construction." Moreover, as the District Court noted, "there is nothing in the record about beer or wine on-premises consumption until March of 1995." Based on the foregoing, we hold, as did the District Court, that "[t]he record does not reveal any conduct, act, language, or silence on the part of Anaconda-Deer Lodge County which would lend itself to estoppel."

34 Affirmed.

/S/   JIM REGNIER

We Concur:

/S/   KARLA M. GRAY
/S/   WILLIAM E. HUNT, SR.
/S/   TERRY N. TRIEWEILER
/S/   W. WILLIAM LEAPHART