FILED

05/02/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0395

DA 22-0395

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 74N

INGE and MARK CAHILL, RANDY and
KERIN GAYNER, WILLIAM and
NANETTE REED, and IRVING ERICKSON,

     Petitioners and Appellants,

  v.

CITY OF COLUMBIA FALLS, COLUMBIA
FALLS BOARD OF ADJUSTMENT, and
CNS PROPERTY DEVELOPMENT, LLC,
a Montana Limited Liability Company,

     Respondents and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV-20-1176
                Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Lindsey W. Hromadka, Weinberg & Hromadka, PLLC, Whitefish,
            Montana

        For Appellee City of Columbia Falls and Columbia Falls Board of Adjustment:

            Stephanie Breck, Breck Law Office, PC, Columbia Falls, Montana

        For CNS Property Development, LLC:

            Karl Rudbach, Ramlow & Rudbach, PLLP, Whitefish, Montana

                       Submitted on Briefs:  March 1, 2023
                               Decided:  May 2, 2023

Filed:

                         _____
                                    Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Inge and Mark Cahill, Randy and Kerin Gayner, William and Nanette Reed, and Irving Erickson (collectively, Petitioners) appeal an Eleventh Judicial District Court ruling affirming on judicial review the Columbia Falls Board of Adjustment's (the Board's) approval of CNS Property Development, LLC's (CNS's) zoning variance request. We affirm.

¶3 A nine-unit apartment building, "the Swiss Apartments," was built sometime around the late-1960s, outside of the Columbia Falls City (City) limits. The property was unzoned at the time. In 1978, the property was zoned as one-family residential and in 1998, the property was annexed into City limits, maintaining a single-family residential (CR-3) zoning designation. CNS purchased the property in 2005.

¶4 Notwithstanding the single-family zoning designation, CNS continued to operate the Swiss Apartments pursuant to Columbia Falls Municipal Code (CFMC) § 18.211.010, which allows for the continued existence of structures built before the zoning code became applicable. In early August 2020, two fires completely destroyed the Swiss Apartments. CNS sought to rebuild. However, the municipal code made clear that the accommodation

2

for preexisting nonconforming structures terminates upon destruction of the structure and that such properties are thereafter subject to "all of the regulations" otherwise applicable to structures in the zoning district. CFMC § 18.211.050(A).

¶5 Unable to rebuild pursuant to the accommodation for preexisting nonconforming uses, CNS instead sought a zoning variance from the Board that would allow CNS to rebuild apartments on the property otherwise zoned for single-family residential uses. Rather than build a single nine-unit building like that which had burned down, CNS planned to divide the nine units between three smaller buildings to better blend in with the look of the neighborhood. On November 17, 2020, the Board held a meeting where it took public comment, deliberated, and ultimately approved the variance request. Petitioners sought judicial review in District Court, which affirmed the Board's decision. Petitioners now appeal to this Court.

**Standard of Review**

¶6 A district court reviews a board of adjustment's decision for an abuse of discretion. *Carlson v. Yellowstone Cty. Bd. of Adjustment*, 2017 MT 186, ¶ 13, 388 Mont. 232, 399 P.3d 322; *Flathead Citizens for Quality Growth, Inc. v. Flathead Cty. Bd. of Adjustment*, 2008 MT 1, ¶ 32, 341 Mont. 1, 175 P.3d 282. A board abuses its discretion when it relies on "information so lacking in fact and foundation" that its decision is "clearly unreasonable." *Carlson*, ¶ 13; *Flathead Citizens*, ¶ 32. So long as the board's decision was not illegal or without jurisdiction, a court does not examine the wisdom of its decision. *Carlson*, ¶ 13; *Schendel v. Bd. of Adjustment*, 237 Mont. 278, 283, 774 P.2d 379, 382 (1989). On appeal to this Court, we review a District Court's affirmation of a board of

3

adjustment's decision for an abuse of discretion. *Carlson*, ¶ 13; *Schendel*, 237 Mont. at 283, 774 P.2d at 382.

**The Board's Factual Findings**

¶7     Petitioners argue that the Board's findings were erroneous and that its decision to grant the variance was an abuse of discretion. The following conditions must be met for a variance to be proper: (1) the variance must not be contrary to the public interest; (2) a literal enforcement of the zoning ordinance must result in unnecessary hardship owing to conditions unique to the property; and (3) the spirit of the ordinance must be observed and substantial justice done. *Carlson*, ¶ 17.

¶8     Petitioners challenge the District Court's findings on each of these factors. First, Petitioners challenge the conclusion that the variance is in the public interest inasmuch as it will help "provid[e] affordable housing for young families and members of the workforce living in Columbia Falls." Petitioners point out that CNS's purported commitment to keeping its rentals affordable has not been backed up by a legally-enforceable instrument such as a deed restriction. Regardless, the District Court found that preventing the loss of nine rental units in Columbia Falls was in the public interest, a conclusion we do not disturb here.[1]  Petitioners further argue that the District Court failed to consider "evidence of

---

[1] Petitioners cite to *Cutone v. Anaconda Deer Lodge*, 187 Mont. 515, 610 P.2d 691 (1980), where we upheld a district court affirming an adjustment board's decision not to grant a variance for a proposed tavern found to constitute a potential fire hazard, source of parking problems, and source of increased traffic. The facts of *Cutone* are distinguishable, as Petitioners fail to point us to substantial objective evidence that rebuilding the nine rental units at issue here pose the risks of fire, parking problems, and increased traffic that the bar in *Cutone* did. Moreover, on the layered deferential standards of review applicable in a zoning case, *affirming* a board decision to *deny* a variance does not necessarily mean that we would have *overturned* a board decision to *grant* a variance. Petitioners' other cited case, *Lambros v. Bd. of Adjustment*, is similarly unhelpful to

untidiness" by the Swiss Apartments' tenants. Petitioners fail to point us to any authority designating alleged untidiness by former tenants on a property as precluding a finding of public interest in a variance, and we decline to make such a determination here.

¶9     Second, Petitioners challenge the District Court's finding that a failure to grant a variance would result in unnecessary hardship owing to conditions unique to the property. Petitioners allege that the destruction of the Swiss Apartments in two fires does not rise to the level of unnecessary hardship stemming from unique conditions on the property. Petitioners point out that the property could still be used for a single-family home and that the zoning code already sought to avoid "undue hardship" by allowing the Swiss Apartments to have continued standing in the first place as a preexisting nonconforming use prior to the fire. CFMC § 18.211.010. Petitioners point us to no authority providing that an accidental fire destroying a preexisting nonconforming use in such circumstances cannot constitute an unnecessary hardship owing to conditions unique to the property, and we decline to so hold here.[2]

¶10    Third, Petitioners contend that the variance violates the spirit of the applicable ordinances, which have zoned the area for single-family residential and which sunset the accommodation for preexisting nonconforming uses upon destruction of the structure.

---

Petitioners because, in that case, this Court held that the variance should have been *granted*, as was done here. 153 Mont. 20, 452 P.2d 398 (1969).

[2] To the contrary, the only caselaw cited by Petitioners on the matter—where preexisting nonconforming use was a consideration in finding unique conditions on the property—cuts against Petitioners' argument and Petitioners therefore seek to factually distinguish it. *Lambros*, 153 Mont. at 26-27, 452 P.2d at 401.

Petitioners take issue with the District Court's finding that the presence of other multi-unit structures in the neighborhood weighed in favor of granting the variance, as those structures apparently went through a Planned Unit Development (PUD) process that allows for fewer units than the nine CNS wishes to rebuild. Regardless, the District Court found that rebuilding the nine preexisting units—now broken up into three smaller structures to better blend in with the character and aesthetic of the neighborhood—complied with the spirit of the ordinance, a finding we do not overturn on this standard of review.

¶11    Additionally, Petitioners argue that the Board failed to apply the relevant zoning ordinances appropriately. In granting a variance, a board must apply the relevant zoning ordinances under local law. *Carlson*, ¶ 17. Here, Columbia Falls municipal ordinances provide for variances to avoid "unnecessary hardship" through "strict compliance" with applicable zoning regulations when each of the following eight factual findings are made:

1. Strict compliance with the provision of this title will:
   a. Limit the reasonable use of the property, and
   b. Deprive the applicant of the rights enjoyed by other properties similarly situated in the same district.
2. The hardship is the result of lot size, shape, topography or other circumstances over which the applicant has no control.
3. The hardship is peculiar to the applicant property.
4. The hardship was not created by the applicant.
5. The hardship is not economic (when a reasonable or viable alternative exists).
6. Granting of the variance will not adversely affect the neighboring properties or the public.
7. The variance requested is the minimum variance which will alleviate the hardship.
8. Granting the variance will not confer a special privilege that is denied other similar properties in the same district.

CFMC § 18.209.030.

6

¶12 Petitioners challenge the factual findings made by the Board pursuant to CFMC § 18.209.030. Starting with Finding 1.b., Petitioners take issue with the District Court's failure to address its argument that the Board incorrectly concluded that declining to give a variance would deprive CNS of a right enjoyed by others in the area; namely, the "right to reconstruct." Petitioners contend that there is no "right" to reconstruct a nonconforming use under the CFMC. Regardless, Petitioners do not point to any instance in which the Board has refused an applicant's request for a variance to rebuild a preexisting nonconforming use and it is undisputed that other properties in the same zoning district also have multi-unit structures on them. Notwithstanding Petitioners' claim that these other multi-family residences are less dense than CNS's proposed nine-unit rebuild, we cannot say that factual finding 1.b. is so lacking in foundation as to be unreasonable.

¶13 Second, Petitioners take issue with the District Court's affirmance of the Board's finding that the hardship is the result of "circumstances over which the applicant has no control," in the form of an accidental fire. Petitioners contend that the only reason for the "hardship" is that CNS wishes to build nine units in a single-family home zoning district. However, CNS is seeking a variance because of the confluence of two factors—the zoning regulations and the fire.[3] Petitioners point to no authority suggesting that the hardship

---

[3] Petitioners cite to *Carlson*, ¶ 21, where we held that a failure to seek a necessary permit before commencing construction did not render the subsequent necessity of tearing down a partially-built garage a hardship "inherent in [the applicant's] land." Here, the hardship does not result from an applicant voluntarily choosing to begin construction without first obtaining the required permit but, rather, from an accidental fire.

7

cannot be considered a result of a fire if applicable zoning regulations also played a role. Factual finding number two is not so lacking in foundation as to be unreasonable.

¶14 Third, Petitioners challenge the District Court's finding that the hardship was peculiar to CNS's property because, unlike the owners of zoning-compliant structures in the area, CNS could not rebuild the Swiss Apartments due to the structure's nonconformance. Petitioners contend that seeking to continue avoiding compliance does not constitute a peculiar hardship. Regardless, the accidental fire clearly constitutes a hardship unique to CNS's property. Petitioners provide no authority supporting their claim that an accidental fire cannot be classified as a unique hardship under the ordinance simply because the same fire also served as the trigger for terminating the legal accommodation for a preexisting nonconforming use under CFMC § 18.211.050(A). We decline to so hold here and factual finding number three is not so lacking in foundation as to be unreasonable.

¶15 Petitioners do not challenge the Board's fourth factual finding. Under factor number five, Petitioners contend that the hardship is both economic and amenable to a reasonable or viable alternative. Petitioners point out (1) that the rentals are intended to generate profit and (2) that CNS could simply build fewer units (three) pursuant to the PUD ordinance, just as other properties in the area have done. *See* CFMC § 18.348.010 (defining planned unit development as allowing "under certain circumstances, a more flexible means of land development than is otherwise generally permissible under lot-by-lot restrictions."). CNS responds that the District Court and Board were correct that building only three units was not a reasonable alternative to the proposed nine-unit complex and that the hardship is the inability to rebuild after a fire, rather than of a purely economic nature. It is the Board's

8

purview to weigh conflicting evidence and, under the applicable standard of review, we do not conclude that factual finding five is so lacking in foundation as to be unreasonable.

¶16     Petitioners challenge factual finding number six, that the variance will not adversely affect the neighboring properties or public. Petitioners highlight their allegations of "uncleanliness" and the "nuisance" of Swiss Apartments' "unmanaged tenants" as well as unspecified "safety implications" posed by the number and presence of said tenants. Petitioners point to testimony regarding "trash, general untidiness, and occupied tents." Petitioners also allege, without support, that the two fires are evidence of chronic disrepair. However, the Board concluded that the variance will not negatively affect the public, as it will, to the contrary, provide much needed "clean affordable place[s] for the residents of Columbia Falls to live." This Court's role is not to reweigh the evidence.

¶17     As to factor number seven, Petitioners challenge the Board and District Court's findings that the variance is the minimum variance to alleviate the hardship because it will allow the applicants "to replace nine units of apartments lost in the fire and no more." Petitioners contend that the rebuild will involve more buildings (three) and more square feet than the original, which it believes will lead to more people, parking, traffic, and nuisances. As the District Court found, however, the new design was intended to better conform to the character of the single-family neighborhood and the total number of units will remain the same. Petitioners fail to show that the Board's seventh factual finding— that the variance did not need to specify the number of bedrooms or total square feet in order to constitute the minimum variance—was so lacking in foundation as to be unreasonable.

9

¶18 Finally, with regard to factor number eight, Petitioners argue that the variance confers a special privilege denied to similar properties in the same district. Petitioners contend that the Board has never before granted a variance for a rebuild of a nonconforming use. However, neither do Petitioners point to any instance in which the Board has *denied* such a variance to a similarly-situated party and raises no indication that it would do so in the future. The Board found that such circumstances were exceedingly rare but noted that it had provided a setback variance to accommodate the rebuilding of a burned-down home in 2014. The Board's factual findings were not so lacking in foundation as to be unreasonable and the District Court did not abuse its discretion in declining to overturn the Board's decision on this basis.

**Applicability of Growth Plan**

¶19 In the alternative, Petitioners claim that the Board erred in failing to consider the requirements of the City's growth policy in addition to the ordinances discussed above. The Growth Policy designates the area as "urban residential" in which "[s]ingle-family houses are the primary housing type." *See* City of Columbia Falls Growth Policy, 2019 Ed (Growth Policy).[4] It further states that "[d]uplexes, guest houses, accessory apartments, and small dispersed areas of multi-family housing are also anticipated." Growth Policy at 26. Petitioners claim that CNS's proposed rebuild would violate this Growth Policy. However, Petitioners point to no authority indicating that nine units, divided between three buildings, could not constitute "small dispersed areas of multi-family housing" within a

---

[4] Available at https://perma.cc/CRL9-H4XA.

designated region for which single-family houses are only the "primary" housing type, in accordance with the Growth Policy.

¶20 Petitioners argue that the District Court erred in concluding that the Growth Policy must only be considered in adopting zoning ordinances, but not in applying those to specific properties such as in the variance decision at issue here. Section 76-2-304(1), MCA, provides that zoning regulations are to be adopted by the city council "in accordance with a growth policy," and § 76-1-605(2)(a), MCA, provides that a "growth policy *is not a regulatory document* and does not confer any authority to regulate that is not otherwise specifically authorized by law or regulations adopted pursuant to the law." (Emphasis added.) *See also* § 76-1-605(2)(b), MCA ("A governing body may not withhold, deny, or impose conditions on any land use approval or other authority to act based solely on compliance with a growth policy adopted pursuant to this chapter."). Thus, the role of a growth policy is to guide adoption of more specific zoning ordinances implementing that policy, not to itself regulate properties directly. *See* Growth Policy at 2 (Growth Policy "presents the goals and policies necessary to give guidance to making decisions concerning development but does not indicate site-specific locations, engineered solutions, or detailed regulations.").

¶21 Petitioners counter by citing to our decision in *Heffernan v. Missoula City Council*, where we held that a city council's approval of a development with complete disregard to an established growth policy rendered the decision arbitrary and capricious. 2011 MT 91, ¶ 79, 360 Mont. 207, 255 P.3d 80; § 76-1-605(1)(c), MCA (local governing body must be "guided by and give consideration to the . . . growth policy in the adoption of zoning

11

ordinances *and resolutions.*" (emphasis added)).  However, in *Heffernan*, the local governing body had failed to adopt zoning regulations to implement the growth plan, so it had failed to apply either the growth policy itself or any ordinances implementing it. *See Heffernan*, ¶ 17.  Here, the Columbia Falls Growth Plan was duly implemented by the CFMC, applied to CNS's property as discussed above.  *See* CFMC § 18.103.010 (stated purpose of zoning ordinances is to "implement and promote the growth policy.").  Thus, unlike the zoning determination found to be arbitrary and capricious in *Heffernan*, the Growth Policy at issue here was not completely disregarded, as it was implemented by the zoning regulations applied by the Board.

¶22     Petitioners also point to our holding in *Flathead Citizens*, ¶¶ 39-40, where we held that § 76-1-605, MCA, "does not prohibit the enforcement of growth policies in all circumstances."  There, we found that a growth policy was directly applicable to a specific property because the zoning regulations at issue explicitly incorporated the growth policy and provided that its growth policy's provisions "shall control" when more restrictive than the applicable regulations.  *Flathead Citizens*, ¶ 40.  Here, even if Petitioners could show that Columbia Falls' Growth Policy is more restrictive than its ordinances, no express incorporation provision is found in the Columbia Falls ordinances like that in *Flathead Citizens*.  CFMC § 18.104.010 provides only that a more restrictive "statute or local ordinance or regulation"—not a growth policy—controls over the regulations contained in that part.  *See also* § 76-2-304(1)(a), MCA (zoning ordinances must be adopted "in accordance with the growth policy"); CFMC § 18.103.010 (providing that the ordinances are intended to "implement and promote the growth policy"); *Flathead Citizens*, ¶ 40 (a

12

growth policy "only acquires legal force by virtue of another law or regulation."). The District Court did not err on this issue.

**Change in Use Restriction**

¶23    Petitioners' third and final argument is that the Board's variance decision violated CFMC § 18.207.030, which provides that "The board of adjustment shall not by either variance or appeal process make any change in uses categorically permitted in any zoning classification or zoning district, or amend the zoning text or map." Petitioners claim that the variance created a "change in use[]" by allowing the property to be used differently— for multi-family dwellings—than the single-family dwelling use categorically permitted by the zoning district's classification. Upon reviewing CFMC § 18.207.030, titled "Jurisdiction," we agree with the District Court that the provision merely makes clear that the Board may not make changes to zoning district maps and classifications; it does not bar the Board from granting variances for individual properties not in "strict adherence" to the zoning ordinances pursuant to CFMC § 18.209.010. *See* CFMC § 18.209.010 (purpose of variance is to avoid "unnecessary hardship [that] is created through strict adherence to the provisions of this title."); *see also* CFMC § 18.206.020 (zoning commission makes recommendations to city council to create zoning districts' boundaries and regulations).[5]

---

[5] Petitioners also claim that the District Court erred to the extent that it relied upon its finding that the variance simply maintained the pre-fire status quo, pointing out that the rebuild will involve nine units divided into three smaller structures, instead of a single, large structure, as had existed before. This argument is not relevant to our interpretation of CFMC § 18.207.030 as addressing only zoning maps and classifications, not the Board's application of the variance ordinance to a single parcel.

    Petitioners further argue that the variance violated CFMC § 18.211.030, which provides that "[a]ny non-conforming structure shall not be altered or enlarged in any way that increases its non-conformity, but may be altered to decrease its non-conformity." CFMC § 18.211 is not

13

¶24 In their Reply Brief, Petitioners also point to CFMC § 18.316.010, located at the beginning of the definitions of the various zoning use districts, which provides that:

> no land, building, or structure shall be used and no building or structure shall be erected, reconstructed, or structurally altered *for any purpose except as allowed in the district* [in which it is located]. . . . Any variance from the *dimensional regulations* shall require prior, specific approval of the board of adjustments[.]

(Emphasis added.)

¶25 Petitioners argue this supports their interpretation of the Board's variance authority as extending only to noncompliance with dimensional regulations, not use restrictions. However, the provision's reference to "dimensional regulations" in no way purports to exclude other regulations from the variance process. Moreover, the general provision that "no . . . structure shall be erected . . . for any purpose except as allowed in the district" is controlled by the more specific provision that the Board may grant a variance where "unnecessary hardship is created through strict adherence to the provisions of this title." CFMC § 18.209.010; *Mosley v. Am. Express Fin. Advisors, Inc.*, 2010 MT 78, ¶ 20, 356 Mont. 27, 230 P.3d 479 (specific provision controls over more general inconsistent provision). Petitioners point us to nothing barring this variance authority from applying to nonadherent uses.

¶26 Upon review, we cannot conclude that the District Court abused its discretion in determining that the Board did not abuse its discretion in granting CNS's application for a

applicable here, as the proposed structures are not preexisting "non-conforming structure[s]" pursuant to the regulatory accommodation for preexisting structures under CFMC § 18.211.010. Rather, they are new structures permitted via a variance pursuant to CFMC § 18.209.

14

variance. *See Carlson*, ¶ 13 (district court reviews board decision for abuse of discretion, while Supreme Court reviews a district court's decision for abuse of discretion).

¶27  We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶28  Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE