JUSTICE NELSON
dissents.
¶62 Although I agree with the majority that § 15-7-111(1), MCA (1997), is unconstitutional on equal protection grounds, I disagree with the majority’s conclusion that § 15-7-111(1), is only unconstitutional as it applies to Roosevelt and similarly situated Class Four *259 property owners. I also disagree with the majority’s decision to rewrite the statute so that Roosevelt and other similarly situated Class Four property owners are taxed at the actual 1997 market value of their property for the purpose of calculating their 1997 property taxes. In so holding, the majority has misconstrued equal protection clause jurisprudence and has placed itself into the role of the Montana Legislature. I would hold that § 15-7-111(1), violates Montana’s Equal Protection Clause on its face, and I dissent from our failure to do so.
¶63 Article II, Section 4, of the Montana Constitution states that “[n]o person shall be denied the equal protection of the laws.” The Equal Protection Clause requires that “all persons be treated alike under like circumstances.” Grooms v. Ponderosa Inn (1997), 283 Mont. 459, 467, 942 P.2d 699, 703. See also Nordlinger v. Hahn (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (citation omitted) (stating that the federal Equal Protection Clause prohibits the governmental decision makers from “treating differently persons who are in all relevant aspects alike.”) The purpose of the Equal Protection Clause is to ensure that individuals are not subject to arbitrary and discriminatory state action. Zemple v. Uninsured Employers’ Fund (1997), 282 Mont. 424, 428, 938 P.2d 658, 661 (citation omitted).
¶64 This Court has ruled that a tax system which causes certain taxpayers to bear a disproportionate share of Montana’s tax burden violates the taxpayers’ right to equal protection of the laws guaranteed by Article II, Section 4, of the Montana Constitution. Montana Dept. of Revenue v. Barron (1990), 245 Mont. 100, 111, 799 P.2d 533, 540. See also Department of Revenue v. Sheehy (1993), 262 Mont. 104, 862 P.2d 1181. Accord Allegheny Pittsburgh Coal Co. v. County Commission of Webster County (1989), 488 U.S. 336, 345-46, 109 S.Ct. 633, 639, 102 L.Ed.2d 688 (stating that the federal equal protection clause “protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class”) (quoting Hillsborough v. Cromwell (1946), 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358). The United States Supreme Court has recognized that, in the realm of state property taxation, “the fairness of one’s allocable share of the total property tax burden can only be meaningfully evaluated by comparison with the share of others similarly situated relative to their property holdings.” Allegheny, 488 U.S. at 346, 109 S.Ct. at 639.
*260 ¶65 I agree with the majority that § 15-7-111(1), violates Roosevelt’s right to equal protection of the laws. However, for two reasons, I cannot agree with the majority’s conclusion that § 15-7-111(1), is only unconstitutional as applied to Roosevelt and other similarly situated Class Four property owners. First, contrary to the majority’s statement in ¶ 46, § 15-7-111(1), is not neutral on its face. The majority admits as much in ¶¶ 33-36 wherein it states:
It is as clear to us, as it was to the District Court, that § 15-7-111(1), MCA (1997), results in three classifications of Class Four property taxpayers:
1. The first class includes those Class Four property owners whose market value declined from 1996 to 1997 and who were, therefore, assessed in 1997 based on a value greater that the market value of their property.
2. The second class includes those Class Four property owners whose market valué did not change from 1996 to 1997 and whose property is, therefore, being assessed based on its actual market value.
3. The third class includes those Class Four property owners whose property increased in value from 1996 to 1997 and who were, therefore, assessed in 1997 based on a value less that the fair market value of their property.
(Emphasis added.) In short, it is as clear to the majority as it was to the District Court that § 15-7-111(1) by its own terms, “results in”[1] three classes of Class Four property owners and the taxpayers in two of these classes pay a disproportional share of Montana’s tax burden. Since the majority concedes that a statute violates equal protection *261 on its face when, by its own terms, it classifies persons for different treatment, I cannot understand how the majority, after stating that the statute results in three classes of Class Four property owners and acknowledging that two of these classes pay a disproportional share of the tax burden, reaches its conclusion that § 15-7-111(1), is neutral on its face. Clearly, § 15-7-111(1), by its own terms (and, thus, facially), classifies property owners for disproportional tax treatment. The Court’s inquiry should therefore be whether § 15-7-111(1), violates Montana’s Equal Protection Clause on its face pursuant to the appropriate level of scrutiny.
¶66 Second, in holding that § 15-7-111(1), violates equal protection as applied to Roosevelt and other similarly situated Class Four property owners, the majority misapplies equal protection jurisprudence. A law violates equal protection “as applied” or “in its application” when “the law either shows no classification on its face or else indicates a classification which seems to be legitimate, but those persons challenging the legislation claim that the governmental officials who administer the law are applying it with different degrees of severity to different groups of persons who are described by some suspect trait.” Rotunda, Nowak & Young, Treatise on Constitutional Law: Substance and Procedure, § 18.4 (1986). See also Cutone v. Anaconda Deer Lodge (1980), 187 Mont. 515, 524, 610 P.2d 691, 697 (stating that a challenge to a statute as violating equal protection as applied arises in cases in which a statute which is constitutionally valid on its face is administered in an arbitrary and discriminatory fashion)(citing Yick Wo v. Hopkins (1886), 118 U.S. 356, 6 S.Ct 1064, 30 L.Ed. 220). In simpler terms, a statute violates equal protection “as applied” or “in its application” when the statute is neutral on its face but is being enforced in a disproportionate, discriminatory, or unfair manner.
¶67 Understandably, and for reasons I will discuss later, Roosevelt does not argue in the instant case that § 15-7-111(1), violates equal protection as applied. This theory in this case finds its genesis solely in the majority’s determination to partially save an otherwise facially unconstitutional statute. In fact, no party in this litigation argued nor did the District Court hold that § 15-7-111(1), is unconstitutional as applied.
¶68 Rather, Roosevelt correctly argues that § 15-7-111(1), violates Montana’s Equal Protection Clause on its face because the statute, by its own terms, results in three classes of Class Four property taxpayers and imposes disproportional tax burdens on two of the classes. *262 Roosevelt does not argue, nor is there anything in the record that indicates, that the Department of Revenue is enforcing § 15-7-111(1), in a disproportionate or discriminatory manner. To the contrary, Roosevelt contends, and the statute, on its face, shows, that he is deprived of his right to equal protection of the law because the Department of Revenue is enforcing § 15- 7-111( 1), on all Class Four property owners in a similar maimer and as mandated by the statute. The result of enforcing § 15-7-111(1), on all Class Four property owners in a similar manner, however, is that two of the taxpayer classes which the statute creates pay a disproportionate share of the tax burden. This disproportional tax treatment does not result from a discriminatory enforcement policy on the part of the Department of Revenue. Rather, this disproportional tax treatment results because the statute, on its face, mandates an assessment method which causes two of three Class Four property owner classifications to pay a disproportionate share of Montana’s tax burden. Thus, in holding that § 15-7-111(1), violates the Equal Protection Clause “as applied” or “in its application,” the majority has misconstrued equal protection clause jurisprudence.
¶69 Moreover, I cannot agree that the majority needs “to speculate about the constitutionality of the statute as applied to other classes of taxpayers” to hold that it violates equal protection on its face. As noted above, it is as clear to the majority as it was to the District Court that § 15-7-111(1), results in three classes of Class Four property owners and the taxpayers in two of these classes pay a disproportional share of Montana’s tax burden. The issue in the instant case is not whether the majority should try to “anticipate every conceivable fact situation to which the 1997 phase-in provision at issue could be applied and whether that statute is rationally related to the state’s objective under those circumstances.” Rather, the issue in the instant case is whether, under the appropriate level of scrutiny, § 15-7-111(1), when enforced pursuant to its mandates, violates Montana’s Equal Protection Clause because it causes similarly situated taxpayers to pay a disproportional share of the tax burden.
¶70 Furthermore, in rewriting the statute, the majority improperly inserts a severability clause into § 15-7-111(1). This Court has repeatedly held that when an unconstitutional provision of a statute is stricken and rejected, the statute is invalid in its entirety if such provision is “necessary to the integrity of the statute, or was an inducement to its enactment.” Thus, when an unconstitutional portion of a *263 statute is eliminated, the remainder of the statute may stand only if it is “complete in itself and capable of being executed in accordance with apparent legislative intent.” Newville v. State Dept. of Family Services (1994), 267 Mont. 237, 255, 883 P.2d 793, 804 (citing Montana Auto. Ass’n v. Greely (1981), 193 Mont. 378, 399, 632 P.2d 300, 311). See also White v. State (1988), 233 Mont. 81, 759 P.2d 971 (holding that the Science and Technology Development Board Seed Capital Bond Act was void in its entirety because it suffered from a constitutional defect in its core provisions).
¶71 By holding that § 15-7-111(1), is unconstitutional only as applied to Roosevelt and similarly situated property owners, the majority has upset whatever balance there was in this statute. The State is still losing revenue from those taxpayers whose property increased in value in 1997, but there is no corresponding gain in revenue from those taxpayers whose property decreased in value in 1997. The majority has effectively destroyed the statutory scheme. By excising that portion of the statute that applies to Roosevelt and similarly situated property owners, the statute is not “complete in itself,” nor is it “capable of being executed in accordance with apparent legislative intent.” What remains and will be enforced under the majority opinion will not be the same statutory scheme as the Legislature intended in the original enactment.
¶72 The majority appears to be acting under the mistaken impression that the act amending § 15-7-111(1) (Senate Bill 195, Ch. 463, Laws of Montana (1997)), contained a “severability clause” similar to the following:
If a part of this act is invalid, all valid parts that are severable from the invalid part remain in effect. If a part of this act is invalid in one or more of its applications, the part remains in effect in all valid applications that are severable from the invalid applications.
We noted in Greely that the inclusion of a “severability clause” in an act is an indication that the drafters and the voters desired that the judicial policy of severability be applied. Greely, 193 Mont. at 399, 632 P.2d at 311.
¶73 However, S.B. 195 did not contain a severability clause. More importantly, the failure to include a severability clause in S.B. 195 was not an oversight on the part of the Legislature. An amendment to S.B. 195 containing a severability clause was proposed early on in the discussions concerning that bill, but that amendment was voted down by members of the Senate Taxation Committee. This Court *264 noted in Sheehy v. Public Employees Retirement Div. (1993), 262 Mont. 129, 864 P.2d 762, that absent a severability clause, the presumption “is against the mutilation of a statute, and that the legislature would not have enacted it except in its entirety.” Sheehy, 262 Mont. at 142, 864 P.2d at 770 (quoting State v. Holmes (1935), 100 Mont. 256, 291, 47 P.2d 624, 636). Nevertheless, this Court has held that even acts containing severability clauses may be voided in toto if they contain constitutional defects in their core provisions. White, 233 Mont. at 93, 759 P.2d at 978.
¶74 Section 15-7-111(1), contains just such constitutional defects in its core provisions. Moreover, by refusing to include a severability clause in the act amending § 15-7-111(1), the Legislature’s intent is clear — § 15-7-111(1), would not have been enacted except in its entirety.
¶75 The majority asserts that in enacting S.B. 195, the Legislature was concerned about a “windfall in revenue” based on increased property values. However, nowhere in the legislative history of S.B. 195 is there a discussion of a windfall in revenue. In addition, the majority contends that in his January 24, 1997 testimony before the Senate Committee on Taxation on S.B. 195, Mick Robinson, representing the Governor’s Office, pointed to a concern that general increases in the value of real property throughout the State of Montana would produce more revenue to the state than was necessary. The majority mischaracterizes Robinson’s testimony. Robinson stated:
In the construction of the budget that was presented to this legislature, this administration chose to address the impact of reappraisal by reducing the statewide mills. This course was chosen for a couple of reasons. First, the variable that is normally available to governments when setting their budgets is the number of mills that are required to adequately fund expenditures. Second, the Montana Tax Policy Task Force, which was appointed jointly by the 1995 Legislature and the Governor, spent almost a year studying this very reappraisal issue and recommended an approach requiring all governments to reduce the number of mills as the appropriate response to reappraisal.
Contrary to the majority’s assertion, Robinson was pointing out that the statewide mills would be reduced in response to reappraisal thereby preventing the state from obtaining more revenue than was necessary.
*265 ¶76 Moreover, even if, arguendo, it was the Legislature’s intention to avoid a windfall in revenue, one can hardly envision a more bizarre and circuitous way of solving this problem than the tax scheme set out in S.B. 195. Rather than enacting a statute resulting in three classes of taxpayers, two of which are required, unconstitutionally, to pay a disproportionate share of their Class Four property tax burden, it would have been a simple matter just to reduce the tax rate for all taxpayers to bring down anticipated revenue or, if too much revenue was received, refund a portion of it on a pro-rata basis to all property tax payers.
¶77 Indeed, it is ironic that the majority — which gives testament to the “principle of judicial restraint” — takes it upon itself to effectively rewrite § 15-7-111(1), so that Roosevelt and other similarly situated Class Four property owners are assessed at the actual 1997 market value of their property for the purpose of calculating their 1997 property taxes while the other Class Four property owners are assessed based on the scheme enacted by the 1997 Legislature. In rewriting the statute, the majority has amended § 15-7-111(1), so that two of the three classes of Class Four property owners pay tax based on the assessed 1997 market value of their property while the remaining group pays tax on the amount below the assessed 1997 market value of their property. Thus, § 15-7-111(1), as rewritten, is no more constitutional than it was before. Now, one class of Class Four property owners will still pay a disproportionate share of the tax burden, albeit a disproportionally low amount. Since a tax system which causes certain taxpayers to bear a disproportionate share of Montana’s tax burden violates the taxpayers’ right to equal protection of the laws guaranteed by Montana’s Constitution, § 15-7-111(1), as amended by the majority, still violates Montana’s Equal Protection Clause because there is not even a rational basis to tax two classes of Class Four property owners at the assessed market value of their property while taxing the remaining class at less than the assessed market value of their property.[2] Since the majority’s amendment places Roosevelt in a *266 different class of Class Four property owners, it is apparent that, at the majority’s invitation, Roosevelt can now sue as to the constitutionality of § 15-7-111(1), as amended by the majority, as it applies to the remaining two classes of Class Four property owners.
¶78 Furthermore, the majority’s rewrite of § 15-7-111(1), fails to solve another sort of unconstitutional classification inherent in the statutory scheme. Besides resulting in three classes of taxpayers with two classes paying a disproportionate share of the tax burden, the statute, originally, and as now rewritten, still decrees that there will be one class of taxpayers who must pay the full amount of their tax burden immediately (i.e., those whose property neither depreciated nor appreciated in value and those, now, whose property depreciated in value) and a second class of taxpayers who will not bear the full burden of their property taxes for 50 years (i.e., those whose property appreciated in value). This, obviously, is one of the reasons Roosevelt did not argue that the statute was unconstitutional as applied. The majority’s rewrite gives him only half a loaf — he now gets to pay his entire property tax on the depreciated value of his property while his neighbors whose property value appreciated do not have to pay their entire property tax burden for 50 years. The majority has simply substituted one form of unconstitutional statute for another.
¶79 In sum, I agree with the majority that § 15-7-111(1), is notrationally related to a legitimate state interest and therefore that it is unnecessary to address Roosevelt’s argument that we should apply middle-tier scrutiny. It is, however, the function of the Legislature, not this Court, to write the tax laws for this State. If the Legislature cannot get it right — and it did not in its enactment of S.B. 195 — it is not the function of this Court to act as a super-legislature to rewrite the tax laws to achieve what may be perceived as a more politically acceptable result. See Cutone, 187 Mont. at 524, 610 P.2d at 697. In its determination to take upon itself the function of the Legislature in rewriting § 15-7-111(1), the majority has violated the very principles of judicial restraint that it pans in its opinion; it has ignored the Legisla *267 ture’s obvious intent to enact S.B. 195 as a package (albeit an unconstitutional one) without the possibility of severing parts of the package; it has read into the statute a severability clause in violation of § 1-2-101, MCA[3]; it has misapplied equal protection jurisprudence; and it has substituted one form of unconstitutional statute for another, thus inviting still more litigation.
¶80 In his January 13,1999 State of the State Address, Governor Racicot, referring to this State’s “antiquated tax system” observed that
our state’s tax system is unfair.
It must be changed.
Our homeowners ... and landowners must be freed from the unfair burdens that have, over the years, been heaped on their financial shoulders.
It is truly unfortunate that this Court in its determination to partially save a facially unconstitutional property tax scheme has only exacerbated and prolonged the unfairness which the Governor correctly observes. Moreover, it is unfortunate that this Court, rather than the Legislature, decided that it was the governmental entity responsible for making the changes to Montana’s property tax system.
¶81 I would hold that § 15-7-111(1), violates Roosevelt’s right to equal protection of the laws under Montana’s Constitution on its face. I cannot agree with the majority’s decision to limit the Court’s holding to Roosevelt and other similarly situated Class Four property owners. Accordingly, I would affirm the District Court’s judgment.
¶82 I dissent.

2. The majority uses the phrase “results in” in an apparent attempt to buttress its conclusion that §15-7-111(1), is not facially unconstitutional. I make two observations in this regard. First, neither the District Court nor Roosevelt used this terminology. However, as the majority notes, the trial court had no problem in discerning the classifying effects of the statute from its plain language. Second, the meaning of “results in” belies the majority’s attempt to read facial unconstitutionality out of the statute by use of this phrase. “Results in” means “to be the cause of: bring, bring about, bring on, cause, effect, effectuate, generate, induce, ingenerate, lead to, make, occasion, secure, set off, stir (up), touch off, trigger, bring to pass, or give rise to.” Rogets 11, The New Thesaurus, 834 (3d ed. 1995). The majority’s use of this phrase results in only semantical distinctions which are without substantive difference. The plain language of the statute facially creates or “results in” three classes of taxpayers.

. The Department of Revenue could argue that there is a rational basis for taxing taxpayers whose property increased in value from 1996 to 1997 based on a value less than the assessed 1997 market value of their property by analogizing to the rational basis grounds set out in Nordlinger. However, as the majority correctly points out, Montana does not have an “acquisition value” system of taxation which was at issue in Nordlinger. Thus, Nordlinger is not controlling. Moreover, a tax system which undervalues property in the same class as that class is defined *266 by state law violates an individual’s right to equal protection of the law. Nordlinger, 505 U.S. at 32, 112 S.Ct. at 2343 (Stevens, J., dissenting) (citing Allegheny, 488 U.S. at 345, 109 S.Ct. at 639). Furthermore, equal protection clause jurisprudence mandates that courts look to whether the legislative enactment is rationally related to a legitimate government interest rather than whether a judicial amendment to a statute is rationally related to a legitimate government interest.

4. Section 1-2-101, MCA, provides:
In the construction of a statute, the office of the judge is simply to ascertain and declare what is in term or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.